**UNITED STATES of America,
Plaintiff-Appellee**

**v.**

**Drake WILLIAMS, et al.,
Defendants-Appellants.**

**No. 85–2588.**

United States Court of Appeals,
Fifth Circuit.

May 13, 1987.

David H. Berg, Joel Androphy, Houston, Tex., for Drake Williams.

Clyde W. Woody, Houston, Tex., for Vance Williams.

Dick DeGuerin, Houston, Tex., for Oscar Silva.

Robert S. Bennett, Houston, Tex. (court-appointed), for Edward Orellana.

Michael E. Tigar, Austin, Tex. (court-appointed), for Michael Sahs.

Jim Skelton, Houston, Tex., for Joseph C. Watson.

George McCall Secrest, Jr., Houston, Tex., for Jan E. Grossman.

Charles Louis Roberts, Joseph Abraham, Jr., El Paso, Tex., for Salvador Meraz.

Ray Bass, Austin, Tex. (court-appointed), for Tanny Miller.

Mervyn Hamburg, Dept. of Justice, Washington, D.C., Henry K. Oncken, U.S. Atty., James R. Gough, Kenneth Magidson, Asst. U.S. Attys., for plaintiff-appellee.

Before GEE and HILL, Circuit Judges, and HUNTER,* District Judge.

* District Judge of the Western District of Louisiana, sitting by designation.

## ON PETITION FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC

(Opinion January 29, 1987, 5 Cir., 1987, 809 F.2d 1072)

GEE, Circuit Judge:

A number of the defendants have sought rehearing, as has the United States; and we write briefly in response to such of these suggestions as merit discussion.

■ In our original opinion, we concluded, for reasons there stated, that the refusal of the trial court to voir dire the jury at the behest of defendant Silva regarding the effect of midtrial publicity required reversal of his convictions. The United States suggests that we erred in so concluding, because the court did not deny Silva's request for an immediate inquiry but merely postponed it until the trial's end some eighteen days later. At that time, it is said, no one reminded the court of the deferred issue and consequently no inquiry was made.[1] We are unwilling to hold that, in order to preserve the point, counsel was obliged to again move the court for relief at the end of the proceedings. Counsel had made his motion and secured his ruling: that the court would take the matter up after verdict. Certainly it would have been the better practice for counsel to have reminded the court, but there is no indication in this record that counsel intentionally "sand-bagged" the court or that he abandoned the point. For all the record indicates (unless counsel did in fact remind the court, in which case the problem vanishes), the court's decision to pass on the motion at the end of trial slipped counsel's mind as it did the court's. In these circumstances, we cannot conclude that the point is not preserved.

■ The United States also suggests that a remand for purposes of recalling the jurors and examining them to determine whether any were influenced by the publicity would be a more appropriate, and less

1. There is some dispute whether the motion was renewed, but we assume for purposes of our inquiry that it was not.

drastic, remedy than a new trial. While the suggestion is not entirely without precedent, we do not believe that an inquiry at this late date into the effect of publicity upon them months ago would be practical. A new trial of Silva must remedy the defect.

Appellant Salvador Meraz contends that the midtrial publicity was innately prejudicial to his case. We earlier concluded that the substance of the publicity could not be taken as probative of his guilt and therefore did not raise a serious question of possible prejudice. We address this point on rehearing because one of the damaging newspaper articles mentioned Meraz by name. The article appearing in the April 26, 1985, *Houston Post* contained the following passage:

> Supporting testimony of previous witnesses, Reinhart said two members of the alleged gang—Williams and Salvadore [sic] Meraz—described to her how their alleged gang is structured.
>
> She said Williams once drew a "tree," saying it showed that "Vance was at the bottom and the branches were the different people it (marijuana) went to." And she said Meraz, at a party in 1977, "pointed out everyone and told me what they did" in the alleged drug organization.

*Houston Post*, April 26, 1985, at 3A. Ms. Reinhart did not testify at trial that Meraz pointed out the members of the drug organization. These paragraphs present material that goes beyond the record and raises questions of possible prejudice to Meraz and therefore allows him to cross the initial threshold of the inquiry.

■ We now must determine the likelihood that these two paragraphs actually influenced the jury's deliberations. *United States v. Manzella*, 782 F.2d 533, 543 (5th Cir.), *cert. denied sub nom Jimenez v. United States*, —— U.S. ——, 106 S.Ct. 1991, 90 L.Ed.2d 672 (1986). Meraz was mentioned only near the end of a medium-length article. The article focused on the bail revocation of Vance Williams and Oscar Silva and only incidentally mentioned Meraz. In addition, none of the follow-up articles mentioned Meraz. The above isolated reference to Meraz pales in comparison to the publicity that directly affected Vance Williams and Oscar Silva. We hold that the small amount of prejudicial publicity did not deprive Meraz of his right to an impartial jury. We therefore affirm Meraz's convictions.

■ Appellant Jan Grossman asks us to reconsider our holding that the government met its burden of proving that it used evidence derived from legitimate independent sources to prove his guilt. Grossman had talked to the DEA under an informal grant of use immunity. In our original opinion, we addressed only the use of evidence before the Grand Jury. Grossman asserts that the government has the burden of proving that the evidence presented at the trial was not tainted. We agree. The district judge did not have Grossman's immunized statements when he conducted the original *Kastigar* hearing and therefore would have been unable to decide the issue fairly. *See Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). The fact that Grossman talked to the DEA before his indictment under a grant of use immunity shifts the burden to the government "to demonstrate by a preponderance of the evidence an independent source for all evidence introduced." *United States v. Seiffert*, 501 F.2d 974, 982 (5th Cir.1974). The *Kastigar* hearing held by the district court was insufficient and therefore we remand with orders for the district court to conduct a hearing in accordance with the dictates of *Kastigar* and of this opinion.

Finally, we note a renewed objection on rehearing by Appellant Sahs, who takes us to task for "upholding the district court's mere statutory definition on the enterprise element" in the face of *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). As the court there stated, and as Sahs correctly notes:

> In order to secure a conviction under RICO, the government must prove both the existence of an "enterprise" and the connected "pattern of racketeering activ-

ity." ... The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise.

*Id.* at 583.

■ We have, of course, no quarrel with the court's view set out above; and we readily concur in Sahs' suggestion that the instruction employed here is not a model of clarity and that the better practice is to instruct the jury by reference to the specific elements of proof set out in *Turkette.* These observations, however, do not avail Sahs, for in this case other portions of the instructions on count one effectively insure that the conviction was based on findings that inherently establish the requisites of a RICO enterprise. The conspiracy instruction clearly indicates that each individual defendant must have wilfully joined with the group (as a group). The conspiracy instruction also reemphasized that the common purpose this group of defendants was charged with pursuing was "to finance and purchase marijuana and cocaine from each other and other persons, to provide storage and transportation and distribution of the substances, to collect and distribute funds realized from the distribution, to legitimize income and to travel to accomplish these things." A conviction under the conspiracy instruction, therefore, insures that the jury found that a true RICO enterprise existed, because the instruction specifically tied the conspiracy charge to a description of a pattern of planned activities that inherently suggest the existence of an ongoing organization and a continuing unit of associates.

Except as indicated above, the Petitions for Rehearing are DENIED; and, no member of this panel nor judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Federal Rules of Appellate Procedure and Local Rule 35) the Suggestions for Rehearing En Banc are DENIED.