**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 98-40799

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROY EDWARD CANTU,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas (Brownsville Division)

August 11, 1999

Before SMITH, DeMOSS, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

In this appeal, we are called upon to determine whether the government violated a cooperation agreement and a separate plea agreement by charging and securing the conviction of Defendant-Appellant Roy Edward Cantu for conspiracy to participate in a Racketeer Influenced and Corrupt Organizations ("RICO") enterprise in violation of 18 U.S.C. 1962(d) (1984). For the reasons ascribed, we affirm.

I

In 1995 Defendant-Appellant Roy Edward Cantu ("Cantu") was indicted in federal district court in the Eastern District of Texas in connection with a drug trafficking operation run by his brother, Javier Cantu. See United States v. Cantu, 167 F.3d 198 (5th Cir. 1999) (detailing the basic

1

facts of Roy Cantu's arrest).[1]  Cantu was charged in the Eastern District with conspiracy to possess marijuana with intent to distribute, as well as the substantive offense of possession with intent to distribute.  Cantu subsequently entered a plea agreement with the government, in which he pled guilty to the conspiracy charge in exchange for the dismissal of the possession charge.  After Cantu began serving his sentence, the government offered Cantu the opportunity to reduce his sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure in exchange for his cooperation.  Cantu agreed, and over the following year provided the government with information about Javier Cantu's drug operation under a use immunity agreement.[2]  However, when his brother Javier was eventually brought to trial, Cantu refused to testify for the government.

The government subsequently obtained a two count indictment against Cantu in the Southern District of Texas, charging him with operating a RICO enterprise, in violation of 18 U.S.C. § 1962(c), and with conspiracy to operate a RICO enterprise, in violation of § 1962(d).  Alleging that the government had violated the cooperation agreement, Cantu filed a motion to dismiss the indictment and a motion to suppress evidence obtained from the information he had provided the government.  The district court held a hearing and denied his motions.  After a six-day trial, the jury acquitted Cantu on count one, the substantive RICO charge, and convicted him on count two, the conspiracy charge.  The district court then sentenced Cantu to 224 months imprisonment.[3]  Cantu timely

---

[1]Cantu was arrested 200 miles outside of Houston in connection with the transportation of approximately 200 pounds of marijuana.

[2]Our review of the record has not produced a formal written cooperation agreement. However,  we have examined a letter from the government to Cantu responding to his interest in debriefing under the protection of a proffer or non-use letter (the "agreement").  The letter clarifies the "ground rules" for any such proffer of offering of information.

[3]The substantive RICO statute charged in the indictment prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).
Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection . . . (c) of this section." 18 U.S.C. § 1962 (d).

appealed.

## II

We address three issues in the instant appeal, including: (1) whether the government violated its cooperation agreement with Cantu by using immunized information in the second prosecution; (2) whether the government breached its plea agreement with Cantu by basing the instant RICO charges in the same conduct that supported the possession charge previously dismissed in the Eastern District of Texas; and (3) whether the district court erred in giving supplemental instructions to the jury.[4]

## A

Under a grant of use immunity, the government is prohibited from using information provided by the defendant in any criminal case. See 18 U.S.C. § 6002; Kastigar v. United States, 406 U.S. 441, 460 (1972). As the Supreme Court explained in Kastigar, the prohibition is comprehensive—the government may not use the defendant's testimony directly as evidence or indirectly as an investigatory lead. See Kastigar, 406 U.S. at 460; United States v. Boruff, 870 F.2d 316, 319 (5th Cir. 1989). When a defendant claims that the government wrongfully used immunized testimony, the government has the burden of proving by a preponderance of the evidence "that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." Kastigar, 406 U.S. at 460; United States v. Williams, 809 F.2d 1072, 1082 (5th Cir. 1987).

Relying on Kastigar, Cantu argues that the government violated the cooperation agreement, his constitutional right to due process, and his Fifth Amendment right against self-incrimination when it allowed Special Agent Steven Hooten to testify before the grand jury.[5] Cantu presented these arguments in the district court in his motion to dismiss the indictment and in a motion to suppress.

---

[4]Cantu argues that the district court erred in denying his request to instruct the jury on Count Two pursuant to Reves v. Ernst & Young, 507 U.S. 170 (1993). We addressed this same issue in an earlier case, United States v. Posada-Rios, 158 F.3d 832 (5th Cir. 1998). Cantu raises this issue in order to preserve it in the event the question is decided differently by the Supreme Court.

[5]Cantu provided information, some of which was self-incriminating, to Agent Hooten during his debriefing.

3

The district court, after holding a hearing, denied the motions in a brief written order. The district court did not make any factual findings; therefore we review Cantu's claim de novo. See United States v. Castaneda, 162 F.3d 832, 835 (5th Cir. 1998).[6]

As we explained in Castaneda, nonprosecution agreements are contractual in nature. Therefore, we interpret these agreements in accordance with general principles of contract law. See id. Where a defendant has fulfilled his obligations under the agreement, the government must perform its reciprocal promise. See id. In the alternative, a material breach on the part of the defendant absolves the government of any further obligation. See id. Due process concerns preclude the government from unilaterally nullifying the agreements where, as here, the government believes the defendant is in breach. See id. Prior to prosecuting the defendant, the government must prove to the court by a preponderance of the evidence that the defendant breached the agreement in a manner sufficiently material to warrant recission. See id.

Naturally, we turn our attention to the agreement between Cantu and the government. Therein, the government explained that "no statements made or other information or documents provided by you during the proffer will be used directly or derivatively against you in any criminal case." The government also emphasized the importance of Cantu's willingness to testify against all persons implicated in any criminal activity.[7] Nevertheless, when the government brought charges against Cantu's brother, Javier Cantu, based, in part, on information provided by Defendant-Appellant Cantu, he refused to testify.[8]

---

[6]Both the government and the defendant submit that we should review the district court's finding that the government did not breach the cooperation agreement for clear error. See United States v. Gibson, 48 F.3d 876, 878 (5th Cir. 1995); United States v. Williams, 859 F.2d 327, 327 (5th Cir. 1988). However, the absence of factual findings necessitates de novo review. See Castaneda, 162 F.3d at 835 n 24.

[7]In exchange for his testimony and cooperation, Cantu increased the possibility that the government would file a motion to reduce or modify sentence pursuant to Rule 35 of the FED. R. CRIM. P. 35.

[8]Cantu provided information regarding the seizure of marijuana in five instances: (1) the Harlingen Airport; (2) the Sarita checkpoint; (3) in Houston in 1991; (4) a United Parcel Service

Cantu labors, in vain, to convince this court that any use of the information he provided violates his agreement. Under the express terms of the agreement, the protections of use immunity are conditioned upon Cantu's providing information, as well as testifying before the grand jury and at trial. Otherwise, the government would secure the benefit of his information yet remain restrained in their effort to prosecute those Cantu implicated in criminal wrongdoing. We find that Cantu materially breached the terms of his cooperation agreement when he refused to testify against his brother thereby relieving the government of its obligations under the agreement.

Although the government is released from its obligations under the agreement, it may not indict and prosecute a defendant, on the basis of self-incriminating information secured during debriefing, without raising serious Fifth Amendment issues. See Kastigar, 406 U.S. at 444. Consequently, it is incumbent upon the government to demonstrate an independent, legitimate source for the disputed evidence. See id. at 460. We have previously held that a district court conducting a Kastigar hearing must have the defendant's immunized statements in order to decide the issue fairly. See United States v. Williams, 817 F.2d 1136, 1138 (5th Cir. 1987). This requirement also extends to the information presented to the grand jury, see United States v. Sockwell, 699 F.2d 213, 217-18 (5th Cir. 1983), and at trial. See Williams, 817 F.2d at 1138.

In his March 31, 1998 memorandum in support of his motion to dismiss, Cantu provided a list of the statements he considered immunized from prosecution. In response, the government detailed the wholly independent source for the same information.[9] While Cantu may have provided the government with important information, he was never the sole source of such information. The record indicates that the government had secured the cooperation of a number of sources, including Defendant-Appellant Cantu, throughout its investigation. We are satisfied that these same sources

_____

facility in 1993; and (5) in Gregg County, Texas in 1994. Cantu implicated his brother in all of these instances.

[9]These sources include Mark Miller, Fabian Cavazos, Graciela Cantu and Tony Sepulveda. Each of these persons, and others, testified against Cantu at trial. We are satisfied that in each instance, the witness had an independent basis for his or her testimony.

provided the wholly independent source for Cantu's indictment.

During the trial of his case, Cantu asserted that the United States needed to prove that every witness called and every exhibit entered into evidence did not come from debriefing information he provided. See Williams, 817 F.2d at 1138. His objections were overruled. Having reviewed the trial testimony, we are satisfied that each witness had an independent basis for his or her testimony. For the sake of completion, however, the government filed a post-trial response on the Kastigar issue. The post-trial response contained a list of each exhibit and the source of the information. The post-trial response also contained a list of each witness for the prosecution and the source of his or her information. Cantu contends that this information was not properly before the district court and should not be considered on appeal.

We turn out attention to the propriety of using post-trial documents to cure the use of immunized testimony. We seek to determine whether the Fifth Amendment and Kastigar require the court to examine all evidence relevant to a defendant's Kastigar claim at the hearing or whether the court may consider post-hearing, post-trial statements.

Cantu argues that Kastigar requires a full hearing inquiring into content and sources of the government's evidence. Such an inquiry "must proceed line-by-line and item-by-item [and] [f]or each grand jury and trial witness, the prosecution must show by a preponderance of the evidence that no use whatsoever was made of any immunized testimony . . . ." U.S. v. North, 920 F.2d 940, 942 (D.C. Cir. 1990).[10] In North, the court reviewed the immunized testimony in camera and ruled in favor of the government without providing the defendant an opportunity to cross-examine witnesses. In vacating the conviction, the D.C. Circuit commented that "[w]hen all is said and done, the district judge denied the defendant a hearing to which the Constitution entitled him." North, 920 F.2d at 944.

---

[10]Additionally, Cantu contends that "a government agent's denials that he made use of the immunized testimony, standing alone, are generally insufficient to meet the government's burden, even if made in good faith." U.S. v. Schmidgall, 25 F.3d 1523, 1528 (11th Cir. 1994). But the government has pointed to more than enough evidence in the record, submitted in docket entry #32, that would provide the necessary support for a single agent's testimony.

In response, the government points out that the Ninth Circuit has permitted the government to meet its <u>Kastigar</u> burden even without a formal evidentiary hearing. Rather, the government "may meet its <u>Kastigar</u> burden of proof as to the existence of independent, prior sources through affidavits." <u>U.S. v. Montoya</u>, 45 F.3d 1286, 1298 (9th Cir. 1995).

No previous case in this circuit has specifically addressed the question whether a court must consider all the evidence in the <u>Kastigar</u> hearing only, or can rely on post-hearing affidavits and documentation. The most analogous case simply required a court to review the immunized statements before making a <u>Kastigar</u> ruling but did not specifically require all such determinations to be made through a hearing process. <u>See</u> <u>Williams</u>, 817 F.2d at 1138 (5th Cir. 1987).

We hold that the substantial burden of <u>Kastigar</u> does require the government to give the defendant a chance to cross-examine relevant witnesses, to ensure the lack of tainted evidence. Where, however, the government offers such a witness at a hearing, and supplements that witness's testimony with documentation, we can not find a violation of the defendant's <u>Kastigar</u> rights. The focus of the <u>Kastgar</u> inquiry should remain on whether the evidence was tainted, and not on the procedures by which the court comes to this conclusion.

Taking into account the overwhelming evidence in the record that the government had independent evidence for its indictment, and given that the defense had an opportunity to cross-examine the key government witness, neither <u>Kastigar</u> nor the Constitution requires any more. Therefore, we decline to adopt the D.C. Circuit's approach which constitutionalizes elements of the <u>Kastigar</u> process.

Overall, we conclude that Cantu violated the use immunity agreement when he declined to testify against his brother. By breaching the agreement, he exposed himself to prosecution once the government demonstrated that he materially breached the agreement. In this case refusing to testify constituted a material breach and created the likelihood of a subsequent indictment. The government proceeded to secure an indictment and prosecute based wholly upon legitimate independent sources.

B

7

Cantu further complains that the government violated the terms of an April 14, 1995 plea agreement between him and the U.S. Attorney for the Eastern District of Texas. Similar to the use immunity agreement, we apply general principles of contract law in order to interpret the terms of the plea agreement. See Henty v. Hargett, 71 F.3d 1169, 1173 (5th Cir.1996). To assess whether a plea agreement has been violated, this court considers "whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement." United States v. Valencia, 985 F.2d 758, 761 (5th Cir. 1993); see also, United States v. Asset, 990 F.2d 208, 216 (5th Cir. 1993) ("[T]he government is not permitted to breach its part of a plea agreement in such a way that frustrates the defendant's reasonable expectations under the plea agreement."). The defendant bears the burden of demonstrating the underlying facts that establish the breach by a preponderance of the evidence. United States v. Wittie, 25 F.3d 250, 262 (5th Cir. 1994). We review a claim of breach of a plea agreement de novo. See Valencia, 985 F.2d at 960.

On appeal, Cantu contends that the district court erred in finding that the district court did not breach the plea agreement. Again we look to the terms of the agreement. In the plea agreement, the government promised to dismiss (1) count two of the first superseding indictment which charged the defendant with possession with intent to distribute marijuana; (2) the indictment in No. 1:95CR57(3); and (3) the notice and information of prior convictions for purposes of increased punishment previously filed. In exchange for these promises, Cantu agreed to waive his right to a jury trial and pleaded guilty to count one of the indictment charging him with conspiracy to possess with intent to distribute marijuana.

When the government brought the present action in the Southern District of Texas, Cantu moved to dismiss. Cantu argued in the court below and maintains on appeal that the government alleged the same conduct in the previously dismissed possession count in the substantive RICO count in this case. Additionally, Cantu contends that the conspiracy count in this case includes an overt act similarly dismissed pursuant to the plea agreement. The district court conducted a hearing on Cantu's motion and found that the plea agreement addressed only the charge of possession with intent to

8

distribute, a crime that is unrelated to the present RICO charges.

We agree with the district court. It was not reasonable for Cantu to believe that the plea agreement barred the government from bringing a different charge in a future prosecution.[11] The language of the plea agreement is narrowly worded, speaking only to the government's obligation to dismiss "Count II of the First Superseding Indictment." Cf. United States v. Ashburn, 38 F.3d 803, 808 (5th Cir. 1994) (agreeing to dismiss counts and not prosecute for specific robberies could not have led the defendant to believe that dismissed counts could not be a basis for an upward departure); United States v. Rivera, 879 F.2d 1247, 1252 (5th Cir. 1989) (promise not to pursue witness intimidation charges did not imply government would not provide parole officer with information concerning witness intimidation). Cantu's expectations were not reasonable given his acknowledgment that no other promises had been made or implied in the execution of the plea agreement.

Additionally, we find that any exposure to prejudice in this case was harmless. First, the jury rejected the government's evidence on count one, which Cantu claims was derived from conduct addressed in his previous plea agreement. Next, even though certain conduct was incorporated into count two as an overt act, it was only one of nine overt acts presented by the government. At trial, the government adduced sufficient evidence bearing upon the other eight overt acts to justify Cantu's conviction for RICO conspiracy. Cantu's claim is without merit.

C

Finally, Cantu challenges the supplemental instructions given to the jury on count one of the indictment. The district court enjoys wide latitude in deciding how to respond to questions from a

---

[11]Circuit courts do not agree on the issue of whether a plea agreement entered in one district is binding on another district. Compare United States v. Annabi, 771 F.2d 670, 672 (2d Cir. 1985) (per curiam) (holding plea agreement binds only office of United States Attorney for the district in which plea is entered unless it affirmatively appears that agreement contemplates broader restriction) with United States v. Harvey, 791 F.2d 294, 302-03 (4th Cir. 1986) (holding that plea agreements are those of the United States unless it expressly limits the government's obligation). The language of the plea agreement in the case at bar does not require us to reach this issue.

9

jury which, in this instance, precipitated the supplemental jury instructions. See United States v. Mann, 161 F.3d 840, 864 (5th Cir. 1998). Overall, we seek to determine whether "the court's answer was reasonably responsive to the jury's questions and whether the original and supplemental instructions as a whole allowed the jury to understand the issue presented to it." Id.

Cantu argues that the district court erred by giving the jury, which was in the midst of deliberations, supplemental instructions on count one that varied from the initial charge.[12] The supplemental instructions were in response to a communique from the jury indicating that they were unable to reach a consensus and intimating that rereading the jury instructions given some four days earlier may assist.[13] Cantu complains that the supplemental instructions required the jury to find in the disjunctive that Cantu participated in the *management or operation* of a RICO enterprise, whereas the initial instructions charged the element in the conjunctive. We find no merit in Cantu's claim.

The supplemental instructions were wholly consistent with both Supreme Court and Fifth Circuit precedent. See Reves v. Ernst & Young, 507 U.S. 170, 185 (1993) (holding that a substantive RICO conviction requires proof beyond a reasonable doubt that the defendant participated in the operation or management of the enterprise itself); United States v. Posada-Rios, 158 F.3d 832, 856 (5th Cir. 1998) (same). As an initial matter, we find no error in the substance of the supplemental instructions.

Citing United States v. Gaskins, 849 F.2d 454, 458 (9th Cir. 1988) and FED. R. CRIM. P. 30, Cantu argues that the district court improperly modified its instructions after closing argument. Unlike the government, Cantu never requested the court's permission to give additional argument during the jury's deliberations. Under these circumstances, we find that Cantu has waived this

---

[12]In his brief, Cantu also seems to allege that the district court improperly varied the instructions for count two. Cantu's allegation is conclusory inasmuch as he fails to explicate the basis for the claim. Indeed, all of Cantu's reasoned arguments address the variation which occurred with respect to count one.

[13]Cantu emphasizes that a different judge provided the supplemental instructions to the jury. This fact is of no moment.

argument on appeal.

Finally, the record clearly indicates that the jury acquitted Cantu on count one. Any variation which may have occurred with respect to that count had no bearing on Cantu's conviction for conspiracy under count two. It is well settled that conspiring to commit a crime is an offense wholly separate from the crime which is the object of the conspiracy. See United States v. Nims, 524 F.2d 123, 126 (5th Cir. 1975). Moreover, we have consistently held that a conspiracy charge need not include the elements of the substantive offense the defendant may have conspired to commit. See United States v. Fuller, 974 F.2d 1474, 1479-80 (5th Cir. 1992); United States v. Graves, 669 F.2d 964, 968 (5th Cir. 1982). Accordingly, we reject Cantu's claim that the district court erred by giving the jury supplemental instructions. We are satisfied that the district court's supplemental instructions were responsive to the jury's questions and allowed the jury to understand the issue presented to it.

III

Finding no merit in any of Cantu's claims, we AFFIRM.