**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 29, 2011

Lyle W. Cayce
Clerk

No.  09-31137

UNITED STATES OF AMERICA,

                                    Plaintiff-Appellee,

versus

MATTHEW VICKERS,

                                    Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Louisiana
USDC No. 1:08-CR-344-1

Before SMITH, SOUTHWICK, and GRAVES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Matthew Vickers appeals his conviction of forcible assault of a correctional officer by striking the officer with his fist in violation of 18 U.S.C. § 111(a).  Find-

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

ing no error, we affirm.

## I.

Patrick Craig, a federal corrections officer, testified that he observed Vickers, a federal prisoner, dressed in the wrong clothes for his work detail. Craig informed Vickers that he would need to return to his unit to change, but Vickers responded, "F--k you. I'm not going."

The prosecution played a silent video depicting snippets of this confrontation; Craig testified that the video was showing him ordering Vickers to follow him to the lieutenant's office, only to have Vickers walk away in the opposite direction. Craig then placed a hand on Vicker's arm to direct him to the lieutenant's office, which is where the video ends.

Craig testified that Vickers grabbed him by the throat, and Vickers demanded that Craig get his hands off of him. Craig said that he pushed Vickers away, only to have Vickers come back at him, this time throwing a punch. The video does not show the beginning of the physical altercation, but only an altercation that was already underway, when Craig and the other officers were attempting to subdue Vickers.

Craig was asked by the prosecutor whether he was injured. Vickers objected on the ground that the evidence was irrelevant to the crime for which he was charged, adding that even if the testimony was relevant, its probative value was outweighed by unfair prejudice. The court overruled the objection and allowed Craig to testify as to his injuries. The government also introduced five photographs depicting those injuries.

Also testifying for the government was corrections officer Brian Rabalais, who stated that he observed the altercation between Vickers and Craig from an observation tower twenty yards above the scene. He heard Craig tell Vickers to follow him to the lieutenant's office, but Vickers walked away in the opposite dir-

ection. Rabalais saw Craig place his hand on Vickers, only to have Vickers turn around and hit Craig two or three times. Craig attempted to wrap Vickers in a bear hug, only to trip and fall to the ground, allowing Vickers to fall on top of Craig and continue to strike him.

Vickers presented two witnesses. Jose Santos testified that the incident began when Craig started screaming at Vickers and placed his hands on Vickers's chest to push him toward the unit. Santos said that he was unable to see who threw the first punch, because he was bent over, picking up an object.

Andre Dorsey testified that he heard Craig order Vickers back to the unit and heard Vickers respond "all right." Dorsey stated that Craig told Vickers "I said now," grabbed Vickers by the shoulder, ordered him to the lieutenant's office, and pushed him into a fence. Dorsey saw Craig throw the first punch.

During closing arguments, the prosecutor noted that Santos's testimony did not match up with the other evidence presented at trial. Specifically, the prosecutor focused on the fact that Santos testified that he did not see who threw the first punch, because his head was down while he was bending over to pick something up. After highlighting one minor discrepancy in that testimony—Santos testified that he had bent over to pick up a radio even though he had told officers immediately following the incident that he had bent over to pick up a watch—the prosecutor focused on a larger issue with Santos's testimony: The video of the altercation did show that Santos bent over to pick something up, but only after the fight had already started. After noting this discrepancy, the prosecutor asked the jury, rhetorically, "So why did he tell you that he didn't see who threw the first punch even though he was standing in the direct vicinity of the area of the assault?"

Answering her own question, the prosecutor stated the following:

> Well, I'll tell you why. You see, Jose Santos can't tell you the truth, ladies and gentlemen, because if he tells you that Officer

No. 09-31137

Craig was attacked by the defendant, then he will get a reputation for ratting out a fellow prisoner and he will pay his price in prison at the hands of the other inmates.

But if he tells you that Matthew Vickers was attacked by Officer Craig, well then, he's under oath and he knows he's under oath on the stand, and he may have to spend a little more time in prison for telling you something like that. So why did he make up a story? He gave himself an out. He didn't want to have to say one way or the other. His testimony can't be truthful, cannot be trusted.

Vickers did not object to this portion of the prosecutor's closing statement.

During deliberations, the jury sent a note to the court, asking, "Does a reasonable doubt between a forcible and simple assault exist because we could not see the beginning of the altercation. Some jurors feel that it was provoked and more to it than we saw." The court gathered counsel and stated that it would address this issue by bringing the jury back in to "explain to them that they have all the evidence there is to present in the case, to tell them the instructions tell them how to evaluate the evidence and what a reasonable doubt is, and then I intend to read to them, again, [some of the elements]."

Vickers objected to that course of action, arguing that the question indicated that the jury was "having reasonable doubt" and that the reasonable-doubt instruction was the only thing the judge should repeat to the jury. The court responded that it would simplify matters by only telling the jury that it has all the evidence, the instructions tell it how to evaluate what reasonable doubt is, and the instructions also outline the elements of proof and which elements apply to which offense. Vickers reiterated his objection, stating that the court should just tell the jury that "if they have reasonable doubt, they should vote not guilty." The court responded, "I think we've already told them that" and overruled the objection.

When the jury returned to the courtroom, the judge issued the following oral instruction:

No. 09-31137

I received your question. "Does a reasonable doubt between a forcible and simple assault exist because we could not see the beginning of the altercation. Some jurors feel it was proved and more to it than we saw."

With regard to your deliberations, all I can tell you is three things: The first of those is that you have, at this juncture, all of the evidence there is to present in this case, so you have to do your evaluation based on the evidence that you have.

The second thing I need to tell you is that the instructions that I've read to you and that you have copies of tell you how you go about evaluating that evidence and then also defines clearly what a reasonable doubt is.

And the third thing is that the instructions on elements of proof for each of the offenses, forcible and simple, are laid out step-by-step in those instructions, and you need to go back and look at those instructions again carefully on those three areas, and I suspect that will answer your question.

And that is, unfortunately, all I can tell you. So with that, I'm going to send you back to deliberate based on what I've told you in the instructions that you already have. Okay? So you'll be excused.

The jury exited the courtroom at 12:36 p.m. The court received the guilty verdict form at 12:42 p.m., and the original jury note had been received by the judge at 12:22 p.m (at which point the jury had already been deliberating for over an hour). Vickers unsuccessfully moved for a new trial, arguing that the supplemental jury instructions were inadequate and the jury had failed to follow them.

## II.

Vickers argues that the district court erred in admitting any evidence of the injuries suffered by Craig. Where, as here, the defendant objected to the admission of evidence in the district court, we review the admission of that

5

evidence for abuse of discretion. *United States v. Sanchez-Hernandez*, 507 F.3d 826, 831 (5th Cir. 2007). If the evidence was erroneously admitted, we consider whether the error was harmless. *Id.*

Vickers contends that evidence of Craig's injuries—both the testimony highlighting the injuries and the photographs of the injuries—should have been excluded, because that evidence was irrelevant to proving any of the elements of the crime. Vickers also posits that, even if the evidence was relevant, (1) it was cumulative in light of the officers' testimony that Vickers struck Craig with his fist; and (2) any probative value was substantially outweighed by its potential prejudice. None of these arguments has merit.

Vickers is incorrect to say that the evidence of the injuries was irrelevant to proving the offense for which he was charged. He was charged under 18 U.S.C. § 111(a), which punishes "whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title [including federal officers] while engaged in or on account of the performance of official duties." Section 111(a) creates three separate offenses: (1) simple assault, a misdemeanor offense that requires no physical contact; (2) felony assault that involves physical contact—the contact need not result in bodily injury—but does not involve the use of dangerous weapons; and (3) felony assault that involves the use of a dangerous weapon or results in bodily injury. *United States v. Hazelwood*, 526 F.3d 862, 865 (5th Cir. 2008). Vickers was charged with (2): felony assault that resulted in physical contact. The government was required to prove that Vickers actually made contact with Craig; specifically, it sought to prove that Vickers punched Craig.[1]

For that element, the evidence of the injuries is relevant, because it helps

---

[1] This was particularly important, because Vickers had requested, and received, an instruction on the lesser included offense of simple assault—which does not require physical contact.

prove that physical contact occurred: Those injuries could not have been caused by anything other than physical contact.

Vickers claims that the evidence of Craig's injuries was not necessary, because the government did not need to prove that his assault resulted in bodily injury. That is correct, but it mistakes the purpose for which the evidence was offered. The evidence of Craig's injuries proves that bodily injury occurred, but it *also* establishes that physical contact took place. Correspondingly, the evidence of Craig's injuries may serve as proof that a felony assault resulting in bodily injury took place, for which Vickers was not charged, but the evidence of the injuries *also* proves that Vickers committed the offense he was actually charged with—felony assault involving physical contact. The evidence was therefore relevant.

Next, Vickers argues that the evidence of Craig's injuries was unnecessarily cumulative to the testimony of the officers, both of whom testified that Vickers struck Craig with his fist. Vickers contends that the evidence of the injuries themselves adds nothing to the existing evidence that physical contact occurred. That is not accurate. The evidence of the injuries is not cumulative evidence, but corroborative evidence—the existence of the injuries, particularly the photos of said injuries, is being used to corroborate the testimony of Craig and Rabalais that Craig was physically struck by Vickers. Such corroboration was beneficial, if not necessary, in a case that was largely decided on the credibility of the prosecution's witnesses versus that of the defendant's witnesses. Furthermore, in regard to the photos specifically, the evidence was of a different type and brought with it a different confidence of proof: A picture carries with it credibility that is significantly greater than that of witness testimony.

Finally, Vickers urges that the probative value of the evidence is substantially outweighed by its unfair prejudicial effect. As discussed above, the evidence of the injuries was used to prove an element of the crime; its probative

No. 09-31137

value was significant.  The prejudicial effect was accordingly high as well, but Vickers has not shown that any *unfair* prejudicial effect outweighed its probative value.[2]

Although the evidence had significant probative value, the risk of undue prejudice was low.  The fact that Craig sustained some injuries as a result of an altercation was unlikely to cause the jury to ignore all the evidence presented and convict Vickers on an emotional basis.  Vickers has not shown how the images of the injuries were inflammatory, let alone how their inflammatory nature affected the verdict or prejudiced his primary defense (that he did not begin the altercation that led to the injuries).  Though the jury may have had a negative reaction to the existence of Craig's injuries, it was equally free to believe Vickers's argument that Craig began the altercation.[3]

In sum, the evidence of Craig's injuries was relevant to the offense and was not cumulative, and its probative value was not outweighed by its prejudicial effect.  We need not ask whether admission of the evidence was an abuse of discretion or whether any error was harmless, because there was no error at all.

III.

Vickers contends that the district court erred in denying his motion for a new trial based on the inadequate supplemental jury instructions and the jury's failure to follow them.  A court "may vacate any judgment and grant a new trial if the interest of justice so requires.  FED R. CRIM. P. 33(a).  The grant or denial

---

[2] *See Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 427 (5th Cir. 2006) ("'Unfair prejudice' as used in rule 403 is not to be equated with testimony that is merely adverse to the opposing party.  Virtually all evidence is prejudicial; otherwise it would not be material.  The prejudice must be 'unfair.'") (citation omitted).

[3] Additionally, the district court emphasized that it would limit the evidence to only what was necessary to explain the nature of the injuries and thus merely to establish that they had occurred, stating that "if it goes too far, I'm going to sustain an objection.  You're going to have to limit that evidence to the minimum necessary to explain the nature of the injuries."

No. 09-31137

of a Rule 33 motion for a new trial is reviewed for abuse of discretion. *United States v. Laury*, 985 F.2d 1293, 1300 (5th Cir. 1993). A new trial should not be granted "unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict." *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004) (citation omitted). "A new trial is granted only upon demonstration of adverse effects on substantial rights of a defendant." *Id.* (citation omitted).

Vickers advances two grounds for why a new trial should have been granted. First, he argues that the supplemental jury instruction was inadequate. We "review a jury instruction for abuse of discretion, affording substantial latitude to the district court in describing the law to the jury." *United States v. Williams*, 610 F.3d 271, 285 (5th Cir. 2010). A court "enjoys wide latitude in deciding how to respond to questions from a jury." *United States v. Cantu*, 185 F.3d 298, 305 (5th Cir. 1999). Our inquiry is to determine whether "the court's answer was reasonably responsive to the jury's questions and whether the original and supplemental instructions as a whole allowed the jury to understand the issue presented to it." *Id.* at 306.

There was nothing wrong with the supplemental instruction. The question asked by the jury conceivably implicated three issues: reasonable doubt, the distinction between simple and forcible assault, and the availability of evidence. The supplemental instruction told the jury, amongst other things, to review the prior reasonable doubt instruction, to review the elements of the crimes, and that they were to consider only the evidence presented to them. The first of those supplemental instructions reaffirms to the jury that the court's original instruction on reasonable doubt was accurate. The other two inform the jury that it was to only consider the evidence presented to it and to determine whether that evidence satisfied all the elements of the crime charged. Those instructions constituted an accurate statement of the law and served to address all of the issues raised by the jury question.

No. 09-31137

Vickers requested that the court read to the jury the reasonable doubt instruction and inform it that "if they have reasonable doubt, they should vote not guilty." That is exactly what the court did: It instructed the jury to review the (accurate and complete) reasonable doubt instruction given earlier, which included the basic statement that reasonable doubt should lead to a verdict of not guilty.[4] The fact that the court also instructed the jury to review the elements of the offense and to consider only the evidence before it makes the supplemental instruction *better*, not erroneous.

Next, Vickers claims that the motion for a new trial should have been granted because the jury failed to follow the supplemental instructions, which Vickers states required the jury "to review the evidence presented in the trial, to review the elements of the crime with which the defendant was charged, and to review the court's prior instructions on the definition of reasonable doubt." Vickers argues that the length of the jury's deliberations show that it did not follow those instructions, so a new trial is warranted. The amount of time that a jury deliberates is not, however, the principal concern of a court when deciding a motion for a new trial; rather, "if the evidence is sufficient to support the verdict, the length of time the jury deliberates is immaterial." *Guaranty Serv. Corp. v. Am. Employers' Ins. Co.*, 893 F.2d 725, 729 (5th Cir. 1990) (internal quotations and citation omitted).

There was more than sufficient evidence to support the verdict. The victim testified that he was punched by the defendant. That testimony was corroborated by another witness. Although Vickers presented two witnesses, one of them did not see who threw the other punch, and the other was a convicted felon who admitted to being friends with Vickers. It would not be unreasonable to credit the testimony of the officers over that of the defendant's witness. The

---

[4] It is notable that Vickers does not challenge the court's reasonable-doubt instruction from the original jury instruction—or any portion of the original instruction.

No. 09-31137

video tape of the incident, though not showing who threw the first punch, is nonetheless fully consistent with the testimony of the officer—and inconsistent with the testimony of one of Vickers's witnesses. There is more than sufficient evidence to prove every element of felony assault with physical contact; thus, the district court properly denied a new trial.[5]

## IV.

Vickers argues that the prosecutor's statements at closing argument concerning the testimony of Santos constituted reversible error. Where, as here, the defendant does not object to statements made during the prosecution's closing argument, we review for plain error. *United States v. Gracia*, 522 F.3d 597, 599-600 (5th Cir. 2008). "We find plain error when (1) there was an error or defect; (2) the legal error was clear or obvious, rather than subject to reasonable dispute; and (3) the error affected the defendant's substantial rights." *United States v. Juarez*, 626 F.3d 246, 254 (5th Cir. 2010). Once those three elements have been satisfied, we may exercise our discretion to correct the error, *id.*, but we generally do not consider the error unless it "seriously affected the fairness, integrity, or public reputation of the judicial proceeding." *Gracia*, 522 F.3d at 600.

A prosecutor cannot "convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges" or "induce the jury to trust the Government's judgment rather than its own view of the evi-

---

[5] Furthermore, the short time of deliberation does not mean that the jury disregarded the supplemental instructions. The court did not tell the jury mechanically to re-engage in its deliberation process from scratch, reviewing every aspect of the instructions and evidence *de novo*. Rather, the court instructed the jury to review the original jury instructions *to resolve any questions it may have*. It is possible that the jury's confusion was cleared up after it re-read the short portion of the instructions that dealt with reasonable doubt, in which case a quick determination of guilt would be understandable in light of the time the jury had already spent making evidentiary determinations.

dence." *United States v. Young*, 470 U.S. 1, 18-19 (1985). A prosecutor also cannot suggest that he has personal knowledge that a witness is being untruthful. *Berger v. United States*, 295 U.S. 78, 86-88 (1935).

Nonetheless, we do not "lightly make the decision to overturn a criminal conviction on the basis of a prosecutor's remarks alone." *United States v. Virgen-Moreno*, 265 F.3d 276, 290 (5th Cir. 2001). The question is whether, "taken as a whole in the context of the entire case," the statement "prejudicially affect[ed the] substantial rights of the defendant." *United States v. Risi*, 603 F.2d 1193, 1196 (5th Cir. 1979) (quotations and citation omitted). We consider three factors in making that decision: "(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction." *United States v. Wyly*, 193 F.3d 289, 299 (5th Cir. 1999) (quotations and citation omitted). "If the evidence to support a conviction is strong, then it is unlikely that the defendant was prejudiced by improper arguments of the prosecutor and reversal is not required."[6] The test properly places a "substantial burden" on defendants. *Virgen-Moreno*, 265 F.3d at 290.

Although Vickers argues that a prosecutor is not allowed to express a personal belief that a particular witness is lying, that is not what happened here. The prosecutor highlighted a situation in which a witness's testimony conflicted with videotape evidence and his own prior statements,[7] explained a possible

---

[6] *See, e.g., United States v. Casel*, 995 F.2d 1299, 1308 (5th Cir. 1993), *vacated on other grounds as to one defendant sub nom. Reed v. United States*, 510 U.S. 1188 (1994).

[7] The prosecutor highlighted the fact that Santos testified that he did not see the beginning of the altercation because he had bent over to pick up an item, but that the video of the incident showed that Santos had bent over to pick up the item only after the altercation had begun. Thus, his testimony conflicted with the video evidence, and there was no reason why he could not say who threw the first punch. Additionally, Santos testified that he had bent over to pick up a radio; immediately following the incident, however, he had told prison offi-

(continued...)

No. 09-31137

theory for why there was a discrepancy in the witness's testimony,[8] and then argued that the existence of this discrepancy and the explanatory theory should lead the jury to conclude that the witness was not credible. At no point did the prosecutor express any personal knowledge that the witness was being untruthful, give the impression that there was evidence not presented to the jury that indicated the witness was being untruthful, or persuade the jury to trust the government's judgment rather than its own. The prosecutor merely highlighted some evidence and put forward a reasonable interpretation of it. Thus, Vickers cannot satisfy even the first prong of the plain error analysis: that there was error.

AFFIRMED.

---

[7] (...continued)
cials that he had bent over to pick up a watch.

[8] The prosecutor's theory was that Santos was faced with two impossible outcomes: He could not tell the truth that Vickers started the fight, because to do so would lead to negative consequences in prison; but he also could not state that Craig attacked Vickers first, because that could lead to perjury charges. The prosecutor argued that to avoid both of those undesirable results, Santos testified that he did not see the beginning of the altercation.