# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 13, 2013

Lyle W. Cayce
Clerk

No. 12-31083

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MARK J. TITUS,

Defendant - Appellant

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:11-CR-159-1

Before JOLLY, JONES, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

The facts underlying the primary issue in this appeal are a bit confusing. The determining issue is whether the Government unilaterally withdrew from a plea agreement with Titus. Titus entered a guilty plea under the plea agreement, and the plea agreement stated that the Government would not bring further charges. After the Government withdrew from the plea agreement, charging Titus with having breached it, Titus moved to withdraw his plea of guilty. The district court denied his motion. Titus appeals the denial of his

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-31083

motion, the district court's holding that his plea was voluntary, and his restitution order. We affirm.

## I.

The defendant and appellant, Mark Titus, was the Chief Operating Officer of construction contractor Garner Services, Ltd. ("Garner Services"), which he owned with his partners Ed Garner and QCI Marine Offshore LLC. Titus proved to be an untrustworthy partner. He and his brother-in-law, Dominic Fazzio, created a series of fictitious invoices from supposed sub-contractors for work that was never performed, for which Garner Services paid approximately $925,000. These payments went to companies Fazzio controlled, which then passed payments to a company that Titus controlled.

The scheme was discovered and a criminal information, plea agreement, and guilty plea followed. The criminal information charged Titus with one count of conspiracy to commit mail fraud.[1] Titus agreed to plead guilty and waive his right to indictment in exchange for the Government's foregoing additional charges against him relating to the Garner Services scheme. Under the agreement, Titus committed to: (1) execute a form used to identify assets for forfeiture purposes; (2) forfeit any proceeds from the Garner Services fraud; (3) submit to law enforcement interviews "whenever and wherever requested;" and (4) be "completely truthful." The agreement contained a "merger clause" stating that "statements set forth above represent defendant's entire agreement with the Government; there are not any other agreements, letters, or notations that will affect this agreement."

According to Titus's version of the events, sometime before Titus's plea agreement was signed, Tim Wilson, a private investigator whom Titus had hired, spoke with two of the Assistant United States Attorneys ("AUSAs") for the

---

[1] Conspiracy to commit mail fraud violated 18 U.S.C. §§371, 1341.

No. 12-31083

Eastern District of Louisiana on Titus's behalf. Wilson stated that the AUSAs promised not to execute on the forfeiture provision of the plea agreement. The story of the secret deal is contested. The two AUSAs deny having made such a promise.

Titus then pleaded guilty. In a Rule 11 colloquy, District Judge Ivan Lemelle asked Titus if anyone had promised him anything outside the written plea agreement. Titus replied no.[2] Judge Lemelle then accepted the plea as knowing and voluntary. Sentencing was postponed pending further investigation.

Several months later, and after beginning to initiate forfeiture proceedings, the Government informed Titus through a letter that he was in serious breach of his plea agreement. Titus was alleged to have engaged in several transactions to shield assets from forfeiture, including having his wife sell his mother-in-law real property worth $144,000 for $10. The Government also alleged that he had continued to engage in the bribery and kickback scheme.[3] Because of this alleged breach, the Government stated itself not bound by the plea agreement and informed Titus that he would be indicted for additional charges.

On September 11, 2012, almost a year after pleading guilty, Titus moved to withdraw his guilty plea, his plea agreement, and his waiver of indictment. On October 10, the district court denied Titus's motion and sentenced him to 60 months in prison, three years of supervised release, a $100,000 fine, and $925,320 restitution to Garner Services.

---

[2] Judge Lemelle: "Did anyone promise you anything other than a written plea agreement with the government to plead guilty?" Titus: "No, sir."

[3] The Government alleged that Titus had also: (1) refused to execute a form used to identify assets for forfeiture purposes; (2) concealed financial information to block forfeiture of certain assets; (3) not been fully forthcoming in meetings with the Government; and (4) refused to submit to additional interviews.

No. 12-31083

The day after Titus's sentencing, the Government indicted Titus on additional charges in *United States v. Fazzio*, No. 2:11-CR-157-HGB-ALC-2 (E.D. La. June 24, 2011), a case before District Judge Helen Berrigan. This indictment also charged Fazzio. Titus filed a motion to dismiss the indictment, arguing that filing additional charges violated the Government's plea agreement. Judge Berrigan denied the motion, stating that Titus "breach[ed] the plea agreement in multiple ways." Later, three weeks before trial was set to begin, the United States withdrew the case before Judge Berrigan. It is our understanding that no further charges were brought against Titus.

Titus now appeals Judge Lemelle's denial of his motion to withdraw his guilty plea, plea agreement, and waiver of indictment. He also appeals the restitution amount he is charged to repay. If Titus's guilty plea is upheld, all other issues, except the amount of restitution, become moot.

II.

This court reviews the denial of a defendant's motion to withdraw a guilty plea for abuse of discretion. *United States v. London*, 568 F.3d 553, 562 (5th Cir. 2009). It reviews the district court's factual findings for clear error. *United States v. Oliver*, 630 F.3d 397, 405 (5th Cir. 2011).

Titus first contends that the secret deal he struck with the AUSAs not to bring forfeiture proceedings against him induced him to plead guilty. Therefore, because the Government disavowed that deal, his guilty plea was not voluntary. It is, of course, basic that a valid plea of guilty must be knowing and voluntary. *Brady v. United States*, 397 U.S. 742, 748 (1970). Restated, "[a] plea of guilty entered by one fully aware of the direct consequences . . . must stand unless induced by [among other things] misrepresentation (including unfulfilled or unfulfillable promises) . . . ." *Id*. at 755 (internal quotation marks and citation omitted). When a guilty plea is entered because of an agreement with a

4

prosecutor, breach of that prosecutor's promise "taints the voluntariness of [the] guilty plea." *Montoya v. Johnson*, 226 F.3d 399, 405 (5th Cir. 2000) (internal quotation marks and citation omitted).

The district court concluded that the plea was "very expressed, very knowing, [and] very voluntary." It did not err in so holding. Neither did it err in determining that Titus's secret plea deal was likely fictitious. In direct opposition to this later story of an anti-forfeiture deal, Titus told Judge Lemelle when pleading guilty that no one had promised him anything outside the written plea agreement. *Cf. United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001) ("[s]olemn declarations in open court carry a strong presumption of verity") (alteration in original).

Titus next charges the Government with anticipatory breach of the plea agreement by later informing him that it would indict him on additional charges, contrary to the agreement.[4] Because plea agreements are interpreted in accordance with contract law, *Hentz v. Hargett*, 71 F.3d 1169, 1173 (5th Cir. 1996), the question here is whether the Government or Titus was the breaching party. The Government argues Titus breached the agreement by, among other things, concealing assets in contravention of the plea agreement. Its letter that it would further indict him was a response to this alleged breach by Titus. The district court agreed with the Government and upheld the plea agreement.

We review the district court's holding on breach de novo and review its fact findings under the clearly erroneous standard. *United States v. Davis*, 393 F.3d 540, 546 (5th Cir. 2004).

---

[4] Titus also alleges that the Government breached by moving to revoke Titus's bond. The Government informed Titus that it planned to revoke his bond in the letter informing Titus that he would soon be indicted. Titus treats the motion to revoke bond and the notice of indictment on additional charges as a single issue. We do so as well. We see no reason how our analysis would differ if we treated the two separately.

No. 12-31083

The Government cannot unilaterally declare that a defendant has breached a plea agreement and thus relieve itself from its obligations under the bargain.   Instead, the Government must: (1) prove to the court by a preponderance of evidence that the defendant has materially breached the agreement or (2) "[i]f the pleadings show no factual dispute . . . the court may determine breach as a matter of law." *United States v. Castaneda*, 162 F.3d 832, 836 (5th Cir. 1998).  Although we had declined to say "when, during the progress of a criminal investigation, a judicial determination of breach is required to comport with due process," *id.* at 836 n.25, we later held that the Government must prove material breach "prior to prosecuting the defendant." *United States v. Cantu*, 185 F.3d 298, 302 (5th Cir. 1999).  Rooted in due process concerns, the rationale for requiring proof of material breach is to provide the defendant with the opportunity to debate the issue in court.  *See United States v. Miller*, 406 F.3d 323, 334-35 (5th Cir. 2005).

Before Titus's prosecution began in the case before Judge Berrigan, the Government twice proved that Titus materially had breached the plea agreement.  The first occasion was before Judge Lemelle in this case now on appeal.  At Titus's October 10, 2012, hearing on his motion to withdraw his guilty plea, which was also his sentencing hearing, Judge Lemelle stated:

> It's apparent here that there were from what I gather in this present record at least, I've yet to see any new evidence to the contrary other than the affidavits from the Defendant and Mr. Wilson that I didn't find credible, evidence that the Defendant tried to conceal his assets.  I think that's obvious from this particular record . . . .

At the same hearing, Judge Lemelle also fined Titus $100,000, stating "it's also a finding of the Court that based upon the asset information that I have received in connection with these proceedings that [*sic*] a fine would also be appropriate."  The asset information Judge Lemelle referenced included an affidavit from an FBI agent describing sales of two properties by Titus's wife to

No. 12-31083

her mother for nominal sums.  Also included were two contracts for the sale of these properties to Titus's mother-in-law.  As Judge Lemelle later stated in his final order of forfeiture, both properties were subject to forfeiture.

The second judge to find Titus had breached the plea agreement was Judge Berrigan.  After Titus was indicted on additional charges, he moved to dismiss the indictment before Judge Berrigan.  Judge Berrigan denied the motion, stating that Titus "breach[ed] the plea agreement in multiple ways."

The purpose of requiring proof of material breach was also satisfied here. The Government had sent Titus a letter on April 9, 2012, informing him that he would be indicted on additional charges, and that it considered him in breach of the plea agreement because he had shielded assets from forfeiture.  Titus had adequate time to "debate this issue to the court" between his receipt of this letter, and his October 10, 2012, sentencing hearing or his October 11 indictment.  *Miller*, 406 F.3d at 334-35.  Titus's case is nothing like the Government's unilateral determination of breach in *Castaneda*, where the Government informed the defendant he was in breach and indicted him the next day.  *Id.* at 836.

In *Castaneda* and *Cantu*, where, in each, there was a possibility that the defendant was not afforded an appropriate hearing on a breach of the plea agreement in district court, we, as an appellate court, supplied a hearing and determined whether a material breach had occurred.  *See Castaneda*, 162 F.3d at 837-839; *Cantu*, 185 F.3d at 302-03.  Thus, even if we were to assume that Titus did not receive an adequate hearing in the district court, we may determine independently that the Government has proved by a preponderance of evidence that a material breach occurred, given that the defendant has had ample opportunity to present and argue his case for a government breach in the briefing and argument before us.  As in *Davis*, the breach was material because the defendant's failure to perform was not innocent and because "[t]he

7

No. 12-31083

government did not receive the honest, truthful disclosure of information that it had bargained for" in the plea agreement. 393 F.3d at 547. Titus contravened one of the purposes of the plea agreement, asset forfeiture, by concealing assets from the Government. *Cf. id.* (defendant materially breached by "contraven[ing] the purpose of the plea agreement"). Titus thus deprived the Government of the benefit of the bargain, solid evidence of a material breach. *Castaneda*, 162 F.3d at 837.

### III.

Finally, Titus challenges Judge Lemelle's restitution order. "The legality of a restitution order is reviewed de novo, and if the sentence is permitted by law, the [amount of the] award is reviewed for abuse of discretion." *United States v. Ingles*, 445 F.3d 830, 838-39 (5th Cir. 2006).

The Mandatory Victim Restitution Act requires that federal courts order restitution to victims of offenses against property under Title 18, including fraud. *See* 18 U.S.C. § 3663A(c)(1)(A)(ii). Restitution is the full amount of loss that the victim suffers, and no more. *United States v. Beydoun*, 469 F.3d 102, 107 (5th Cir. 2006). The Government must prove restitution by a preponderance of evidence. *United States v. Reese*, 998 F.2d 1275, 1282 (5th Cir. 1993) (citing 18 U.S.C. § 3664(d)).

Titus was ordered to pay Garner Services $925,320, the full amount of which he had defrauded the company. Titus argues that this amount should be reduced in proportion to his share of ownership in the company that was defrauded. This argument, however, ignores that he was ordered to restore funds to the company itself – not its shareholders. Furthermore, Titus's argument asks the court to assume that the money he restores to Garner will flow proportionally to the company's owners, when in fact the company may choose to allocate the restitution amount differently.

No. 12-31083

Titus also argues that the restitution amount should be reduced by the value of the "property" he returned.  Under 18 U.S.C. §3663A(b)(1)(B)(ii), the sum the defendant must pay in restitution is reduced by the value "of any part of the property that is returned."  We understand Titus to argue that the value of his labor to Garner Services after his fraud constitutes "property that is returned." Ed Garner, Titus's partner at Garner Services, submitted an affidavit that the value of Titus's labor since his fraud exceeded the loss that the fraud had caused.  Titus cites no authority, however, that continuing labor after the malfeasance constitutes "property that is returned."   And his reading of "property" as encompassing labor goes against the plain meaning of "property." In any event, we reject his contention.

IV.

For the reasons above, the district court's denial of Titus's motion to withdraw his guilty plea, his plea agreement, and his waiver of the indictment, as well as the denial of modification of the restitution award, and accordingly, the judgment, are in all respects

AFFIRMED.