**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 6, 2011

No. 10-30643

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

RODNEY D. HARPER,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Louisiana

Before WIENER, BENAVIDES, and STEWART, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

Defendant Rodney D. Harper pleaded guilty to a drug conspiracy charge involving "50 grams and more" of cocaine base. Pursuant to a plea agreement, Harper was debriefed by the Government and gave immunized statements about the conspiracy. A probation officer later issued a presentence investigation report (PSR) assigning Harper a guideline sentencing range based on 18 kilograms of cocaine base. Harper objected to the PSR, asserting it was not based on sufficient, reliable information derived from a legitimate source wholly independent of his immunized statements. To support the PSR's guideline calculation, the Government informed both the district court and the probation

No. 10-30643

officer that Harper admitted dealing the drug quantities identified in the PSR during his immunized debriefing.

The issue on appeal is whether the Government breached Harper's plea agreement by using his immunized statements to advocate for the PSR's guideline calculation. We find that such use was inconsistent with any reasonable understanding of Harper's plea agreement, and that the Government's proffered justifications for such use are devoid of merit. Accordingly, we conclude the Government breached Harper's plea agreement, and Harper is entitled to resentencing before a different judge.

## I. BACKGROUND

In October 2009, a grand jury indicted defendant Rodney D. Harper on one count of conspiracy to possess with intent to distribute "50 grams and more" of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 846. Harper ultimately pleaded guilty and signed a factual basis stipulating, in relevant part:

> The defendant, Rodney D. Harper, was intercepted on a call on April 13, 2009, with Shedrick Green in which HARPER negotiated purchasing over 50 grams of crack cocaine from Green for street sale.

> Shedrick Green is scheduled to plead guilty and has agreed to cooperate, and he confirms and corroborates the above-described intercepts. Another informant likewise confirms HARPER's involvement in selling crack in the Ruston, LA, area.

In a plea agreement, Harper agreed to cooperate with the Government. In exchange for his cooperation, the Government granted Harper "use immunity for all prospective statements to law enforcement agents and testimony, given as a result of this agreement." Harper then was debriefed by and gave immunized statements to two members of a Drug Enforcement Agency (DEA)

2

No. 10-30643

Task Force.  According to the Government, Harper revealed that his relevant offense conduct involved 18 kilograms of cocaine base.

On February 1, 2010, a United States Probation Officer issued an initial PSR.  The PSR purported to rely on Harper's signed factual basis, but in fact relied on some other, unsigned factual basis.  The PSR stated, in relevant part:

17.　　The U.S. Attorney has completed a Factual Basis and the defendant has stipulated to its accuracy.  Our investigation reveals it accurately conveys the total offense conduct.  It reads as follows:

18.　　　　. . . The defendant, Rodney D. Harper, was intercepted on several calls with Shedrick Green between February and April, 2009, in which Harper negotiated purchasing crack cocaine from Green for street sale.

19.　　Shedrick Green is scheduled to plead guilty and has agreed to cooperate, and he confirms and corroborates the above-described intercepts.

20.　　Related defendant Kevin Goldsmith has pled guilty . . . and states that he supplied Defendant Harper with half a kilo of cocaine powder every month to be cooked into crack between 2006 through April, 2009.  Goldsmith further states that he has observed Harper cooking the powder into crack.

The PSR concluded Harper "was involved in distributing crack cocaine from on or about April, 2006 through April, 2009 (36 months)," and thus was "accountable for distributing at least 18,000 grams which is equivalent to 18 kilograms of cocaine base or crack cocaine."  Having determined Harper's relevant offense conduct involved 18 kilograms of cocaine base, the PSR assigned Harper a base offense level of 38.  The PSR then credited Harper with a three-

No. 10-30643

level reduction for his acceptance of responsibility. Based on a total offense level of 35 and a criminal history category of IV, the PSR calculated Harper's guideline imprisonment range to be 235 to 293 months.

Harper objected to the PSR. Harper asserted the PSR misstated his signed factual basis and otherwise lacked sufficient, reliable information about his relevant offense conduct. Harper also asserted it was the Government's burden to demonstrate the information in the PSR did not derive from his immunized statements.

On March 5, 2010, the Government informed Harper that "if we are required to proceed with a sentencing hearing on these issues, there will be no 5K1 sentencing motion," and the district court "will hear of Harper's own admissions at the sentencing hearing." The Government asserted the DEA agents who debriefed Harper would testify "that Harper himself admitted his drug trafficking and amounts of cocaine with the same co-defendants and others." According to the Government, Harper could not "now contest the amount of drugs to be held against him for sentencing when he admitted the extent and amounts of his trafficking to the agents himself."

On March 15, 2010, the Government wrote to the probation officer who prepared the PSR. The Government acknowledged "that the wording of Paragraphs 17, 18, 19, and 20 [of the PSR] should be revised." The Government asserted "the information set forth in these Paragraphs is correct, but it should be rewritten so as to characterize it as information provided by the Government of the investigation of the defendant's criminal activities, not as set forth in a stipulated Factual Basis." The Government emphasized "the substance of these Paragraphs is correct and should remain the same, but I suggest the derivation

4

No. 10-30643

of the information should be revised so as to show it came from Government's investigation and not from a stipulated Factual Basis."

The Government again wrote to the probation officer on May 27, 2010, this time copying the district court. The letter was intended "to advise [the probation officer] and the [district court] that the Government supports the findings contained in the Presentence Report." The Government reiterated it would call the case agents who debriefed Harper to testify that he "admitted the quantities of cocaine that he dealt with over the course of this conspiracy."

On June 3, 2010, Harper's attorney notified the Government that it had violated Harper's plea agreement by disclosing Harper's immunized statements to the district court. The Government responded the next day. According to the Government, Harper could not "contest the weights of cocaine used against him when he himself admitted such weights in his debriefing." The Government repeated that Harper "can't perpetrate a fraud upon the Court by denying what he himself admitted."

The probation officer revised the PSR on June 4, 2010. The revised PSR is substantially the same as the initial PSR, except paragraph 17 was changed to read:

> 17.   This case was predicated on information provided by the Drug Enforcement Administration (DEA) which reveals the following information as it concerns this defendant . . . .

On June 16, 2010, Harper filed a "motion for relief from Government's breach of plea agreement." The motion asserted the Government breached Harper's plea agreement by disclosing his immunized statements to the district court. Harper requested reassignment of his case to another judge for sentencing.

5

No. 10-30643

In opposition to Harper's motion, the Government again informed the district court that it would produce testimony from "the case agents who interviewed the defendant in the proffer to testify that the defendant himself admitted to dealing the weights set forth in the PSR." The Government emphasized the district court was "being made aware that the defendant himself admitted to the weights that he now objects to, in order for this [district court] to rule on counsel's objections."

The district court held a sentencing hearing on June 24, 2010. After taking testimony from the probation officer and two codefendants, Kevin Goldsmith and Shedrick Green, the district court adopted the factual findings contained in the PSR, calculated a guideline sentencing range of 235 to 293 months, and sentenced Harper to 240 months imprisonment. There is no indication the district court in fact relied on Harper's immunized statements in arriving at this sentence.

Harper now appeals his sentence. Harper asserts the Government breached his plea agreement and also failed to prove his offense conduct involved 18 kilograms of cocaine base with sufficient, reliable evidence derived from a legitimate source wholly independent of his immunized statements. We conclude the Government breached Harper's plea agreement, and thus Harper is entitled to the remedy he requests: resentencing before a different judge.

## II. STANDARDS

The Government must strictly adhere to the terms and conditions of its promises in a plea agreement. *United States v. Munoz*, 408 F.3d 222, 226 (5th Cir. 2005). Whether the Government has breached a plea agreement is a question of law we review de novo. *United States v. Saling*, 205 F.3d 764, 766

No. 10-30643

(5th Cir. 2000).  The defendant has the burden of proving the underlying facts by a preponderance of the evidence.  *United States v. Gonzalez*, 309 F.3d 882, 886 (5th Cir. 2002).

If the Government breaches a plea agreement, the defendant may seek one of two remedies: specific performance, requiring resentencing before a different judge; or withdrawal of his guilty plea.  *Santobello v. New York*, 404 U.S. 257, 263 (1971); *Gonzalez*, 309 F.3d at 886.  The defendant is entitled to relief even if the Government's breach did not ultimately influence the defendant's sentence.  *Santobello*, 404 U.S. at 263; *Saling*, 205 F.3d at 766-67; *United States v. Valencia*, 985 F.2d 758, 761 (5th Cir. 1993); *United States v. Grandinetti*, 564 F.2d 723, 726 (5th Cir. 1977).

## III.  DISCUSSION

A plea agreement is interpreted in accordance with general principles of contract law.  *United States v. Cantu*, 185 F.3d 298, 302 (5th Cir. 1999).  In determining whether the Government has violated a plea agreement, we ask whether the Government's conduct was consistent with the parties' reasonable understanding of the agreement.  *Gonzalez*, 309 F.3d at 886.  Here, Harper's plea agreement provides "use immunity for all prospective statements to law enforcement agents and testimony, given as a result of this agreement."  We must determine whether the Government's use of Harper's immunized statements to advocate for the PSR's guideline calculation was consistent with a reasonable understanding of this use immunity agreement.

No. 10-30643

Under a "use immunity" plea agreement, "the government is prohibited from using information provided by the defendant in any criminal case."[1] *Cantu*, 185 F.3d at 301 (citing 18 U.S.C. § 6002 and *Kastigar v. United States*, 406 U.S.

---

[1] Under the Fifth Amendment, a witness who is compelled to testify must be granted "[i]mmunity from the use of [that] testimony, as well as evidence derived directly and indirectly therefrom." *Kastigar v. United States*, 406 U.S. 441, 453 (1972); *see also* 18 U.S.C. § 6002 (requiring same). When a defendant voluntarily provides information to the Government, however, the Fifth Amendment is not implicated, and the Government may negotiate a lesser degree of immunity. *See, e.g.*, *United States v. Ramos*, 537 F.3d 439, 453 n.8, 454 (5th Cir. 2008); *United States v. Smith*, 452 F.3d 323, 337 (4th Cir. 2006). Ordinary principles of contract interpretation apply when interpreting the scope of negotiated immunity. *Ramos*, 537 F.3d at 451.

Here, Harper's plea agreement grants "use immunity" for all prospective statements given as a result of the agreement. This Court has tended to interpret "use immunity" as a term of art that covers both direct and derivative use of immunized statements. *See, e.g.*, *United States v. Brown*, 298 F.3d 392, 411 n.21 (5th Cir. 2002) (Dennis, J., concurring in the judgment in part and specially concurring in part) ("Use immunity – also termed use/derivative-use immunity – is immunity from the use of the compelled testimony (or any information derived from that testimony) in a future prosecution against the witness." (quotation marks omitted)); *United States v. Taylor*, 277 F.3d 721, 724 (5th Cir. 2001) (finding that "when a 'use immunity' plea agreement is involved," "the government may not use the defendant's testimony directly as evidence or indirectly as an investigatory lead"); *compare United States v. Castaneda*, 162 F.3d 832, 834 n.1 (5th Cir. 1998) (finding Government "reserved its right to pursue investigative leads derived from [defendant]'s statements and use this 'derivative' evidence against him" under terms of proffer agreement). This interpretation is consistent with at least two of our sister circuits, which have held that "use immunity" presumptively includes both direct and derivative use immunity. *See United States v. Kilroy*, 27 F.3d 679, 685 (D.C. Cir. 1994); *United States v. Plummer*, 941 F.2d 799, 805 (9th Cir. 1991); *compare Smith*, 452 F.3d at 338 n.3 (declining to decide whether "use immunity" includes derivative use immunity).

We need not decide whether Harper is entitled to derivative use immunity under his plea agreement. For the reasons stated below, we conclude the Government violated Harper's plea agreement by directly using his immunized statements to advocate a higher guideline sentencing range.

441, 460 (1972)).  According to our case law, information provided pursuant to a use immunity plea agreement "may not be used in determining the applicable guideline range under the Sentencing Guidelines." *United States v. Taylor*, 277 F.3d 721, 724 (5th Cir. 2001); *see also Gonzalez*, 309 F.3d at 887; *United States v. Marsh*, 963 F.2d 72, 74 (5th Cir. 1992); *Shacklett*, 921 F.2d at 584.  This conclusion is supported by § 1B1.8 of the Sentencing Guidelines, which expressly provides that a defendant's immunized statements "shall not be used in determining the applicable guideline range, except to the extent provided in the agreement."  United States Sentencing Guidelines (U.S.S.G.) § 1B1.8(a) (2009).  Notably, the application notes to § 1B1.8 explain:

> if a defendant is arrested in possession of a kilogram of cocaine and, pursuant to an agreement to provide information concerning the unlawful activities of co-conspirators, admits that he assisted in the importation of an additional three kilograms of cocaine, a fact not previously known to the government, this admission would not be used to increase his applicable guideline range, except to the extent provided in the agreement.

*Id.* § 1B1.8 cmt. n.1.

Section 1B1.8 of the Sentencing Guidelines sheds light on the reasonable understanding of Harper's plea agreement.  At the very least, Harper was reasonable in understanding that the Government would not use his immunized statements to advocate a higher guideline sentencing range.  After all, the district court was prohibited from basing its guideline determination on those statements.  Yet this is precisely what the Government did.  In response to Harper's objection that the PSR's guideline calculation lacked a sufficient and reliable basis, the Government offered Harper's immunized statements to fill the gap.  The Government notified both the probation officer and the district court

that "Harper himself admitted the quantities of cocaine that he dealt with over the course of this conspiracy." The Government later reminded the district court that "the defendant himself admitted to dealing the weights set forth in the PSR." The stated purpose of these disclosures was to "support[] the findings" in the PSR and help the district court "rule on counsel's objections." The Government's direct and repeated use of Harper's immunized statements to advocate a higher guideline sentencing range was not consistent with any reasonable understanding of Harper's use immunity agreement.

It makes no difference whether the district court or the probation officer was in fact influenced by the Government's advocacy. *See Santobello*, 404 U.S. at 263; *Grandinetti*, 564 F.2d at 726. Harper entered into a plea agreement with the Government, not the district court or the probation officer. In entering into the plea agreement, Harper bargained not for a promise that third parties would disregard his immunized statements, but for a promise that the Government would not use those statements against him, including by advocating a harsher sentence. Because the Government failed to uphold its end of the bargain, we need not reach the question whether the Government's improper disclosures were ultimately successful. *Santobello*, 404 U.S. at 262.

The Government has proposed several justifications for its use of Harper's immunized statements, but none is availing in this case. First, the Government asserts Harper was perpetrating "a fraud upon the Court by denying what he himself admitted." The Government is correct, of course, that Harper may not make false statements or misrepresentations to the court. As Harper's plea agreement recognizes, immunized statements may be used in a prosecution for perjury or giving a false statement. *See, e.g.*, U.S.S.G. § 1B1.8(B)(3); *see also*

No. 10-30643

*Gonzalez*, 309 F.3d at 886 (noting immunized statements may be used to impeach later inconsistent statements). But Harper never misrepresented to the court that his offense conduct involved less than 18 kilograms of cocaine base. Harper simply objected to the sufficiency, reliability, and independence of the evidence presented in the PSR. At least in part, Harper's objections were well-founded: without explanation, the PSR quoted at length from an unsigned factual basis. In short, although Harper may not defraud the court, the Government still must meet its burden of proof at sentencing with sufficient, reliable evidence derived from a legitimate source wholly independent of Harper's immunized statements. *See Kastigar*, 406 U.S. at 460 (finding prosecution has "affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony"); *Taylor*, 277 F.3d at 725 (applying *Kastigar* in sentencing context). It was not a fraud upon the court for Harper to hold the Government to its burden of proof.

The Government next suggests Harper opened the door to his immunized statements by requiring the Government to demonstrate a wholly independent source for the information in the PSR. It is true that in most cases a district court conducting a taint hearing must have the defendant's immunized statements "to decide the issue fairly." *See United States v. Williams*, 817 F.2d 1136, 1138 (5th Cir. 1987). This is because the court typically must examine the immunized statements in order to determine whether they could have led to the information the Government seeks to use against the defendant. In this case, however, the Government did not disclose Harper's immunized statements to show that the information in the PSR came from an independent source. If

11

anything, the Government's disclosure that Harper "admitted the quantities of cocaine that he dealt with over the course of this conspiracy" would seem to undermine the independence of the PSR.  In short, this is not a case in which the Government revealed specific immunized statements to show they could not have led to the information the Government sought to use.  This is a case in which the Government improperly used Harper's immunized statements to advocate a higher guideline sentencing range.

As a final matter, we need not decide whether the mere disclosure of Harper's immunized statements to the probation officer and the district court violated Harper's plea agreement.  Harper's plea agreement recognizes that "as part of the presentence investigation the Government will make available to the Court all evidence developed in the investigation of this case."  Even assuming this provision applies to Harper's prospective immunized statements,[2] the provision still does not authorize the Government to *use* those statements against Harper.  In other words, even if the plea agreement recognizes the Government would "make available" Harper's immunized statements to the district court in some circumstances, this does not mean the Government also could use those statements to advocate a higher guideline sentencing range.  *See*

---

[2] The Government asserts Harper's immunized statements constitute "evidence developed in the investigation of this case."  We do not decide the issue, but we observe that although Harper's immunized statements may have helped the Government investigate and prosecute *other* cases, the Government's investigation of *this* case would appear to have ended when Harper pleaded guilty and the Government agreed not to further prosecute him based on its investigation. *Cf. Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 377 (5th Cir. 2002) ("It is a fundamental axiom of contract interpretation that specific provision control general provisions."); *United States v. Elashyi*, 554 F.3d 480, 501 (5th Cir. 2008) (noting plea agreements are "construed strictly against the Government as the drafter").

*Munoz*, 408 F.3d at 227-28 (finding "Government crossed the line to breach by affirmatively advocating the application of the enhancement," even though the relevant facts already were in the record); *Saling*, 205 F.3d at 767 (finding Government breached plea agreement by attempting to "influence" the court to impose a consecutive sentence, even though the relevant facts already were in the record). As already discussed, such use was prohibited by the use immunity clause in Harper's plea agreement.

Relatedly, we have observed § 1B1.8 of the Sentencing Guidelines "does not prohibit disclosure of information provided in a plea agreement at sentencing, but rather, it prohibits this information from being used to determine the applicable guideline range." *Gonzalez*, 309 F.3d at 887; *cf.* U.S.S.G. § 1B1.8 cmt. n.1 ("This provision does not authorize the government to withhold information from the court . . . ."). This observation is consistent with all that has been said above. There may be some circumstances when it is appropriate for a district court to consider a defendant's immunized statements. For example, as already discussed, a district court may consider immunized statements at a taint hearing or for purposes of impeachment. *See* U.S.S.G. § 1B1.8(b)(1), (3); *Gonzalez*, 309 F.3d at 886. A district court also may consider immunized statements in determining whether a defendant breached a cooperation agreement. *See* U.S.S.G. § 1B1.8(b)(4). And a district court may consider immunized statements "in determining whether, or to what extent, a downward departure from the guidelines is warranted pursuant to a government motion under § 5K1.1."[3] *See id.* § 1B1.8(b)(5); *id.* § 1B1.8 cmt. n.1. But none of

---

[3] On the other hand, it is the policy of the Sentencing Commission that immunized statements "shall not be used to depart upward." U.S.S.G. § 1B1.8 cmt. n.1.

No. 10-30643

this means the Government has blanket authorization to disclose on its own initiative and without any legitimate purpose a defendant's immunized statements to the district court. As the Eighth Circuit has observed, although a district court generally "should have all the available, relevant information about a defendant when selecting an appropriate sentence . . . a defendant's prior, immunized testimony is, by agreement with the Government, not available." *United States v. Abanatha*, 999 F.2d 1246, 1249 (8th Cir. 1993); *see also Munoz*, 408 F.3d at 227 ("Although the Government has a duty to provide the sentencing court with relevant factual information and to correct misstatements, it may not hide behind this duty to advocate a position that contradicts its promises in a plea agreement."). Here, the Government has failed to identify any legitimate purpose for disclosing Harper's immunized statements to the district court, or for using those statements to advocate a higher guideline sentencing range.

To summarize, the Government used Harper's immunized statements to advocate a higher guideline sentencing range. This use was not consistent with a reasonable understanding of Harper's use immunity agreement, nor was it justified by any other provision in Harper's plea agreement or the law. Because the Government breached Harper's plea agreement, Harper is entitled to his requested remedy: specific performance and resentencing before a different judge.

## IV. CONCLUSION

For the reasons stated, we VACATE Harper's sentence and REMAND to the district court for resentencing before a different judge.

14