# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-11173

United States Court of Appeals
Fifth Circuit

**FILED**

March 20, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff –Appellee

v.

JESSE TYRONE CHAVFUL,

Defendant–Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before SMITH, PRADO, and OWEN, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

The defendant, Jesse Tyrone Chavful, pleaded guilty to conspiring to possess cocaine with intent to distribute. The charge arose from a negotiation to sell drugs in November 2011 and an actual sale in June 2012. Chavful and the Government entered into a cooperation agreement: Chavful agreed to plead guilty and provide information to the Government in exchange for a guarantee that this information was "not to be used to increase Chavful's Sentencing Guideline level or used against Chavful for further prosecution."

At sentencing, the Government introduced information about a different, intervening drug transaction—information that the Government acquired under the protection of Chavful's plea agreement. The Government relied on this information to support its theory that the November and June

No. 13-11173

transactions were separate and that therefore Chavful should be accountable for both. The district court sentenced Chavful based on a Guidelines range that took into account the amount of drugs transacted in both November and June. Chavful appeals his sentence.

## I.    BACKGROUND

Chavful agreed to plead guilty to conspiracy to possess with the intent to distribute five kilograms or more of cocaine. In exchange, the Government agreed to dismiss any remaining charges and to bring no additional ones. The plea agreement supplement provides:

> The government agrees that USSG § 1B1.8 is applicable to Chavful. Any information provided by Chavful, other than that charged in the pending indictment, in connection with Chavful's assistance to the United States, including debriefing and testimony, will not be used to increase Chavful's Sentencing Guideline level or used against Chavful for further prosecution . . . .

Chavful's Presentence Investigation Report (PSR) assessed a base offense level of 34 based on a determination that Chavful was responsible for 15 kilograms of cocaine and 1,200 pounds of marijuana. The PSR made this calculation based on two incidents. First, Chavful participated in drug-related telephone calls with a confidential informant on November 10, 2011. In recorded conversations, Chavful discussed drug loads going north to the Chicago area to his cousin and coconspirator, Samuel Hurd. Chavful told the informant that Hurd would not be present for delivery but would be responsible for payment. Chavful indicated that Hurd wanted 10 kilograms of cocaine and 1,000 pounds of marijuana. Second, on May 23, 2012, Chavful met with the informant and agreed to purchase 5 kilograms of cocaine and 200 pounds of marijuana. The meeting was audio- and video-recorded. Delivery of the 5 kilograms of cocaine and 200 pounds of marijuana was made on June 6, 2012, at Chavful's San Antonio t-shirt shop.

The PSR recommended that Chavful be held responsible for the 10 kilograms of cocaine and 1,000 pounds of marijuana discussed in the November 2011 phone call *and* for the 5 kilograms of cocaine and 200 pounds of marijuana actually exchanged in June 2012. With a total offense level of 31 and a Category III criminal-history score, Chavful faced a Guidelines range of 135 to 168 months' imprisonment.

The PSR also noted that, during the proffer interview, Chavful revealed that he met with Hurd in the spring of 2012 and discussed obtaining cocaine and marijuana. As a result of that conversation, Chavful obtained 30 pounds of marijuana that were delivered to Hurd. Chavful was not held accountable for the 30 pounds of marijuana because this information was protected by the plea agreement.

Both in writing and at sentencing, Chavful objected to the PSR. He argued that he should not be held responsible for the drugs discussed during the November 2011 conversation—a negotiation that he claims became a completed agreement only when delivery was made in June 2012. Chavful relied on U.S. Sentencing Guidelines Manual (U.S.S.G.) § 2D1.1, whose commentary provides that a defendant typically shall not be held accountable for both the negotiated and the transacted amounts. *See* U.S.S.G. § 2D1.1 cmt. n.5. In essence, Chavful claimed that the PSR double-counted the amount of drugs attributable to him because the November and June incidents were in fact related.

The probation officer, in contrast, insisted the November and June transactions were separate. The amount discussed in the November 2011 phone conversation was "an agreed-upon quantity and there was no information to show that [Chavful] ever intended to cancel this order or to not receive it." The purchase made in June 2012 was a separate transaction unrelated to the negotiated amount discussed "six months previously."

No. 13-11173

At sentencing, the Government maintained that the November 2011 and June 2012 amounts came from "two separate and distinct and independent agreements." It explained that because of the intervening sale in the spring of 2012, the November and June deals for which Chavful was held responsible are best understood as separate agreements. Chavful objected to the Government's reliance on the intervening transaction, stating this information was protected by the proffer agreement. The relevant colloquy reads as follows:

> MR. TROMBLAY [Attorney for the Government]: The facts show that there were at least three separate agreements.
>
> . . . .
>
> [S]ometime in the Spring [Hurd] shows up at Mr. Chavful's T-shirt shop and says, hey, I need for you to get me something. *And in the meantime he then acquires, as an intermediate, 30 pounds of marijuana . . . hence, we have a new agreement* for 5 kilograms of cocaine and 200 pounds of marijuana. And these drugs were ultimately delivered to Mr. Chavful at his T-shirt shop on June the 6th.
>
> Hence, we have three separate agreements. We have a separate agreement distinguished by time, destination, and drug quantity; 10 kilograms of cocaine, a thousand pounds of marijuana to be delivered to Mr. Hurd in Chicago.
>
> . . . .
>
> Six months later, we have 5 kilograms of cocaine and 200 pounds of marijuana, which was part of a separate and distinct agreement between Mr. Chavful and Mr. Hurd in San Antonio. *And then separating those two in San Antonio is the delivery of 30 pounds of marijuana in a blue ice chest.*
>
> MS. HARPER [Attorney for Chavful]: Your honor, I really need to object, because Mr. Tromblay keeps throwing in information using it to augment the sentencing that he got in a proffer agreement.
>
> MR. TROMBLAY: That is not true.
>
> MS. HARPER: I find that in contravention of the proffer agreement.
>
> MR. TROMBLAY: That is not the intent or spirit of why we are discussing this. These facts are disclosed in the PSR. And I am not asking the Court to attribute the 30 pounds of marijuana to Mr. Chavful's sentence. *The only reason why I am bringing this up is*

No. 13-11173

*to show, in essence, these were, indeed, separate and distinct agreements with intervening facts.*

The district court overruled Chavful's objection to the drug-quantity determination and agreed with the PSR's recommendation that Chavful be held accountable for both the amount of drugs discussed in June and those transacted in November. The Government then filed a motion for a downward departure pursuant to U.S.S.G. § 5K1.1, requesting a three-level departure. The court granted the motion and departed three levels, resulting in a Guidelines range of 97 to 121 months. Chavful was sentenced to 97 months in prison to be followed by three years of supervised release.[1] He filed a timely notice of appeal.

## II. DISCUSSION

This is a direct appeal of a federal criminal sentence. The district court had jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

"Whether the Government has breached a plea agreement is a question of law we review de novo. The defendant has the burden of proving the underlying facts by a preponderance of the evidence." *United States v. Harper*, 643 F.3d 135, 139 (5th Cir. 2011) (citations omitted).[2] A defendant is entitled to relief "even if the Government's breach did not ultimately influence [his]

---

[1] Though the district court never explicitly accepted the plea agreement, its actions indicated an implicit acceptance. *See* ROA.167; Fed. R. Crim. P. 11(c)(1)(C), (3)(A); *United States v. Morales–Sosa*, 191 F.3d 586, 587–88 (5th Cir. 1999) (per curiam).

[2] The Government contends that this Court's review is for plain error because Chavful failed to preserve his objection. We disagree. "To preserve error, an objection must be sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction." *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009). After the Government made reference at sentencing to the spring 2012 marijuana transaction in order to argue the November and June deals were separate, Chavful objected: "Your Honor, I really need to object, because Mr. Tromblay keeps throwing in information using it to augment the sentencing that he got in a proffer agreement." This objection was timely and sufficiently specific to preserve error.

5

sentence." *Id*. If the Government has breached a plea agreement, the defendant may elect a remedy: "specific performance, [i.e.,] requiring resentencing before a different judge; or withdrawal of his guilty plea." *Id*. Here, Chavful requests resentencing.

Chavful contends that his sentence should be vacated and his case remanded because the Government breached the plea agreement by using protected information to increase his sentence. "In determining whether the terms of the plea bargain have been violated, the court must determine whether the government's conduct is consistent with the parties' reasonable understanding of the agreement." *United States v. Wilder*, 15 F.3d 1292, 1295 (5th Cir. 1994) (quoting *United States v. Valencia*, 985 F.2d 758, 761 (5th Cir. 1993)).

Here, the terms of the supplement to Chavful's plea agreement include the Government's promise that "[a]ny information provided by Chavful, other than that charged in the pending indictment, in connection with Chavful's assistance to the United States, including debriefing and testimony, will not be used to increase Chavful's Sentencing Guideline level." The agreement explicitly incorporates § 1B1.8 of the Guidelines. That provision states that information obtained by the government as part of a cooperation agreement "shall not be used in determining the applicable guideline range," subject to modification by the agreement and to written exceptions not at issue here.[3]

---

[3] The relevant portions of § 1B1.8 and its commentary, application note 1, provide:

(a) Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.
. . . .

Chavful proposes that the most natural interpretation of these provisions is that the Government would not rely on protected information to advocate for a greater sentence.

Our caselaw supports Chavful's interpretation. In *United States v. Gonzalez*, under the protection of a plea agreement the defendant proffered information that a Suburban carrying four individuals was meant to arrive on the scene for a drug transaction. 309 F.3d 882, 884 (5th Cir. 2002). This Court determined that the Government "used" information protected by a plea agreement "to determine the applicable guidelines range" because "in the face of the court's doubts about whether Gonzalez had a leadership role, the Government argued, more than once, that only Gonzalez knew of the Suburban and this indicated he was a leader in the offense." *Id.* at 887. We continued: "Under the applicable preponderance of the evidence standard, keeping in mind the reasonable expectation of Gonzalez that his agreements prohibited information he provided . . . from being used against him absent any exceptions, this agreement was breached." *Id.* Similarly, in *Harper*, the plea agreement offered use immunity to a cooperating defendant. 643 F.3d at 140. This Court determined that, "[a]t the very least, Harper was reasonable in understanding that the Government would not use his immunized statements to advocate a higher guideline sentencing range." *Id.* at 141. Importantly, we

---

1. This provision does not authorize the government to withhold information from the court but provides that self-incriminating information obtained under a cooperation agreement is not to be used to determine the defendant's guideline range. Under this provision, for example, if a defendant is arrested in possession of a kilogram of cocaine and, pursuant to an agreement to provide information concerning the unlawful activities of co-conspirators, admits that he assisted in the importation of an additional three kilograms of cocaine, a fact not previously known to the government, this admission would not be used to increase his applicable guideline range, except to the extent provided in the agreement.

disapproved of the fact that "the Government offered Harper's immunized statements to fill the gap" in the PSR's factual recitation. *Id.*

In the present case, the record indicates that at least three times the Government pointed to the protected, intervening spring 2012 transaction to support the argument that the November and June incidents were unrelated.

- "And in fact, we even have intervening circumstances, because, by the way, although these drug amounts are not attributed to Mr. Chavful because they are under a proffer agreement, nonetheless . . . the presentence report discloses that sometime in the spring that he even delivered 30 pounds of marijuana to Mr. Hurd; hence, they are independent. In fact, we have at least three independent agreements."
- "And in the meantime he then acquires, as an intermediate, 30 pounds of marijuana, as well as negotiates for an additional; hence, we have a new agreement . . . ."
- "The only reason why I am bringing up [the 30 pounds of marijuana] is to show, in essence, these were, indeed, separate and distinct agreements with intervening facts."

As in *Gonzalez*, the Government referenced the information protected by a proffer agreement in order to advocate that the defendant be held accountable for a sentencing enhancement unrelated to the specific protected conduct. *See* 309 F.3d at 887. And as in *Harper*, the Government supplied the protected information to "fill the gap" between the two transactions in its narrative of the underlying facts. *See* 643 F.3d at 141.[4] The text of Chavful's agreement, the Guidelines, and our precedent all support the conclusion that the Government breached the plea agreement.

---

[4] The Government contends that it did not breach the plea agreement because it relied on an already-known fact: Chavful's PSR permissibly disclosed the spring 2012 drug transaction. But "[a]s this court has held before, § 1B1.8 does not prohibit disclosure of information provided in a plea agreement at sentencing, but rather, it prohibits this information from being used to determine the applicable guideline range." *Gonzalez*, 309 F.3d at 887. Merely mentioning the intervening transaction was permissible; using it to advocate for an increased sentence was a breach of the agreement.

No. 13-11173

As the Government's conduct was at odds with Chavful's reasonable expectation "that his agreements prohibited information he provided . . . from being used against him," *Gonzalez*, 309 F.3d at 887, we hold that the Government breached the plea agreement, and we remand this matter for resentencing.[5]

## III.  CONCLUSION

For the foregoing reasons, we VACATE Chavful's sentence and REMAND to the district court for reassignment to a different district judge and for resentencing.[6]

---

[5] Accordingly, we need not reach Chavful's claim that the district court committed an appealable "arithmetic error" error in making a drug-quantity determination under U.S.S.G. § 2D1.1.

[6] We reassign this case not because of any misconduct by the district court but because in such cases "specific performance . . . requir[es] resentencing before a different judge," *Harper*, 643 F.3d at 139.