# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 18-10161

———————

United States Court of Appeals
Fifth Circuit

**FILED**
January 6, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

ROSALIO RAMOS TAPIA, also known as Rosalio Ramos, also known as Chale, also known as Mocho,

      Defendant - Appellant

———————

Appeal from the United States District Court
for the Northern District of Texas

———————

Before SOUTHWICK, GRAVES, and ENGELHARDT, Circuit Judges.

KURT D. ENGELHARDT, Circuit Judge:

Rosalio Ramos Tapia pleaded guilty, pursuant to a plea agreement, to conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B)(viii).  The district court sentenced Tapia to 210 months of imprisonment and four years of supervised release based on a drug-quantity finding of 45 kilograms or more of methamphetamine.  Tapia appeals his sentence, contending that the Government breached the plea agreement by using protected proffer information to support a higher drug-quantity finding.  We AFFIRM.

**I.**

No. 18-10161

After being indicted for conspiracy to distribute and to possess with intent to distribute methamphetamine, Tapia entered into a proffer agreement on August 24, 2016, with the United States Attorney's Office for the Northern District of Texas. Under the proffer agreement, Tapia was required to "tell the truth" and was prohibited from, among other things, "withhold[ing] any material information" and "seek[ing] to minimize [his] own or anyone else's criminal activity." Law enforcement agents then interviewed Tapia, wherein he estimated participating in transactions of methamphetamine totaling approximately 21 kilograms.

On September 14, 2016, Tapia pleaded guilty, pursuant to a plea agreement, to a superseding information charging that he conspired to distribute and to possess with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine.[1] As part of the plea agreement, Tapia agreed to "give complete and truthful information and/or testimony concerning his participation in the offense of conviction." In exchange, the Government agreed not to bring any additional charges against Tapia based upon the conduct underlying and related to his guilty plea.

A supplement to the plea agreement provided that Tapia further agreed to fully cooperate with the Government and to provide, in any proceeding, information or testimony that is truthful and complete regarding his participation in the offense of conviction and his knowledge of criminal activities. The Government agreed to move for a downward departure under U.S.S.G. § 5K1.1, in the event the Government, "in its sole discretion," determined that Tapia "cooperated and provided substantial assistance in the

---

[1] The August 24, 2016 proffer agreement contained a provision indicating that the proffer agreement would terminate in the event that Tapia signed a plea agreement. Tapia signed the plea agreement on September 5, 2016. Therefore, the plea agreement is the controlling document for review in the instant appeal.

investigation or prosecution of others." Most importantly to the dispute on appeal, the supplement also contained a provision regarding information proffered by Tapia:

> The government agrees that U.S.S.G. § 1B1.8 is applicable to the defendant. Any information provided by the defendant, other than that charged in the indictment, in connection with the defendant's assistance to the United States, including debriefing and testimony, will not be used to increase the defendant's Sentencing Guideline level or used against the defendant for further prosecution, *if in the opinion of the United States Attorney the defendant has met all of the defendant's obligations under the Plea Agreement and provided full, complete, and truthful information and testimony.* However, nothing revealed by the defendant during the defendant's debriefings and testimony would preclude the defendant's prosecution for any violent crime.

As calculated in the presentence report (PSR), Tapia's base offense level was 38, upon a finding that Tapia was responsible for a total of 67 kilograms of methamphetamine.[2] After two two-level enhancements[3] and a three-level reduction[4], Tapia's total offense level of 39 combined with a category I criminal history yielded a guidelines range of 262–327 months of imprisonment. Tapia filed written objections to the PSR, including an objection to the PSR's drug-quantity finding, in which he denied responsibility for the 65 kilograms derived from CD1's statements to agents. The Government filed a response, in which it included, among other exhibits, FBI reports in support of CD1's credibility and reliability, as well as Tapia's proffer information.[5] Subsequently, the

---

[2] This drug-quantity finding was based on information from a cooperating defendant (CD1) who alleged that Tapia and a coconspirator supplied CD1 with an estimated 65 kilograms of methamphetamine, and on a communication intercepted by law enforcement which implicated Tapia's responsibility for two additional kilograms of methamphetamine.

[3] Pursuant to U.S.S.G. § 2D1.1(b)(1) and § 2D1.1(b)(5), respectively.

[4] Pursuant to U.S.S.G. § 3E1.1.

[5] Notably, the Government, in attaching Tapia's proffer information as an exhibit, notified the court that the proffer information could not be used to enhance Tapia's offense level but was being offered as rebuttal evidence to Tapia's objection.

No. 18-10161

Government filed a motion under § 5K1.1, asking that Tapia's total offense level be reduced by two levels, from 39 to 37.  Observing that such a reduction would lower Tapia's guidelines range to 210 to 262 months of imprisonment, the Government requested a sentence of 210 months of imprisonment.

At sentencing, Tapia reiterated his objection to the 65 kilograms of methamphetamine relating to CD1.  Tapia admitted that he had transactions with CD1 but asserted that the transactions totaled no more than six to eight kilograms.  Tapia then contended that he should be held responsible for 5 to 15 kilograms of methamphetamine, a range that corresponded to a base offense level of 34.  In addressing the information detailed in the Government's response to Tapia's PSR objections, Tapia spoke about the Government's use of his own proffer.  Tapia then contended that CD1's information attributing 65 kilograms of methamphetamine to Tapia was not corroborated by the other information presented by the Government.

In response, the Government urged the court to consider the "entire investigation" and began by reviewing the amounts of methamphetamine identified throughout the PSR.  The Government then asserted that Tapia's own proffer indicated he was responsible for more than 5 to 15 kilograms of methamphetamine.  From that proffer information, the Government identified a minimum of 21 kilograms of methamphetamine attributable to Tapia.  The Government ultimately contended that the 65-kilogram quantity was supported by a preponderance of the evidence and that Tapia's objection to the drug quantity should be overruled.

The district court overruled Tapia's objection to the PSR's drug-quantity finding, reasoning that the Government had shown by a preponderance of the evidence that the drug quantity exceeded 45 kilograms of methamphetamine, the threshold for a base offense level of 38.  The court granted the Government's § 5K1.1 motion, thereby reducing Tapia's total offense level from

No. 18-10161

39 to 37.  The statement of reasons reflects that the district court adopted the PSR and PSR addendum without change.  Tapia's guidelines range after the § 5K1.1 departure was 210 to 262 months of imprisonment, and the district court sentenced him to 210 months of imprisonment and four years of supervised release.  Tapia did not object to the sentence after its pronouncement.  He timely filed a notice of appeal.  *See* FED. R. APP. P. 4(b)(1)(A)(i).

On appeal, Tapia contends that the Government breached the plea agreement by using information from his proffer to advocate for a higher sentence.  First, Tapia argues that he preserved this issue for appeal by objecting to the Government's use of proffer information during the sentencing hearing.  Second, he asserts that the district court erred by relying on the protected proffer information in making its drug-quantity finding, which resulted in a higher base offense level and ultimately a higher sentencing guidelines range, such that his substantial rights were affected.

## II.

First, we consider the question of issue preservation, as it dictates which standard of review to apply: *de novo* or plain error.  If Tapia preserved the issue, whether the Government breached the plea agreement is a question of law that is reviewed *de novo.  See United States v. Purser*, 747 F.3d 284, 290 (5th Cir. 2014).  Conversely, if Tapia failed to preserve the issue, plain error review applies.  *See Puckett v. United States*, 556 U.S. 129, 133–35 (2009); *see also United States v. Hebron*, 684 F.3d 554, 557–58 (5th Cir. 2012).

To preserve an alleged error, a party must raise an objection that is sufficiently specific to (1) alert the district court to the nature of the error and to (2) provide an opportunity for correction.  *United States v. Chavful*, 781 F.3d 758, 761 n.2 (5th Cir. 2015) (quoting *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009)); *see Hebron*, 684 F.3d at 558 ("[W]ithout a specific objection

alerting the district court that the government has breached the plea agreement, the error is not preserved."). Although a party is not required to express its objection in "ultra-precise terms," *United States v. Pineiro*, 470 F.3d 200, 204 (5th Cir. 2006), the objection must provide the district court an opportunity to adjudicate the issue in first instance and cure or remediate any alleged breach, *Puckett*, 556 U.S. at 140.

At the sentencing hearing, Tapia spoke about the Government's use of his own proffer:

> However, the Government then goes on and—and they understand, and they made it real clear that they're not to use any debriefing information against the Defendant, but in this case they contend it's done to rebut any evidence that the Defendant would bring.
>
> So I'm contending, Judge, here that they're saying that my client made reference to now about deals that he did with another individual in Tulsa to the tune of about 10 kilos, and that's during debriefing. We're not saying that didn't happen, Judge. He also makes reference to another source that my client was utilizing that allowed him to transact and broker some activity in California.

However, Tapia did not explicitly assert that the Government's disclosure of the proffer information constituted a violation or breach of the plea agreement. Tapia noted the Government's contention that the proffer information could be used as rebuttal evidence, but he did not clearly argue that the Government's contention was wrong. Because Tapia merely noted the prohibition without clearly stating that the Government was violating the plea agreement, his remarks fall short of those in *Chavful*, which were sufficient to preserve a challenge to the breach of a plea agreement. *See Chavful*, 781 F.3d at 761 n.2.

In the absence of a clear objection, our determination of the proper standard of review now turns on whether those same remarks were otherwise sufficiently specific to alert the district court to the alleged contravention. *See id.*; *Hebron*, 684 F.3d at 558. Here, Tapia's remarks did not put the district

No. 18-10161

court on notice of the Government's alleged breach such that the court had the opportunity to cure or remedy the error. Accordingly, Tapia failed to preserve the issue and plain-error review applies.

## III.

Under the plain-error standard of review, Tapia must show not only error based on the breach of the plea agreement but also that the breach constitutes clear or obvious error that affects his substantial rights. *See Puckett*, 556 U.S. at 135 (recognizing that an error is not clear or obvious if it is subject to reasonable dispute). To prove an effect on his substantial rights, Tapia must show "a reasonable probability that, but for the error, he would have received a lesser sentence." *Hebron*, 684 F.3d at 559 (citing *United States v. Villegas*, 404 F.3d 355, 364 (5th Cir. 2005)). Additionally, in *United States v. Mares*, this court emphasized, "the Supreme Court has made it clear that the defendant rather than the government bears the burden of persuasion with respect to prejudice." 402 F.3d 511, 521 (5th Cir. 2005) (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)). If Tapia makes such a showing, this court should exercise its discretion to correct the error if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1906 (2018); *see also Puckett*, 556 U.S. at 135.

Here, whether the Government's use of Tapia's proffer information constitutes clear or obvious error is of little consequence because, ultimately, Tapia's substantial rights were not affected. The district court, as in *Hebron*, could have reasonably based its drug-quantity finding on the facts presented in the PSR. *See Hebron*, 684 F.3d at 559. Although the district court did not specifically articulate how the Government proved by a preponderance of the evidence that the drug quantity was at least 45 kilograms, it did, in its

7

statement of reasons, adopt the PSR and addendum without change. Indeed, the district court must have considered at least some of the information from the PSR to be credible and reliable because if it had not, the court could not have made a drug-quantity finding higher than the 21 kilograms, via the protected proffer information, plus the six to eight kilograms admitted at sentencing, for a total of no more than 29 kilograms. Furthermore, the information from the PSR yielded a total drug quantity of 67 kilograms; so, relying on that unprotected information alone, the 45-kilogram base amount would have been, as the district court articulated, "certainly" met.

Accordingly, Tapia has not carried his burden of proving that he would have received a lesser sentence had the Government not referenced the proffer information; consequently, his substantial rights were not affected.

AFFIRMED.