# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 17, 2025

Lyle W. Cayce
Clerk

———————

No. 24-60602

———————

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

LUIS JAVIER SANCHEZ-ZURITA,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:24-CR-32-1

———————————————————————

Before ELROD, *Chief Judge*, and RICHMAN and WILLETT, *Circuit Judges*.

PRISCILLA RICHMAN, *Circuit Judge*:

Luis Javier Sanchez-Zurita pled guilty to unlawful re-entry after previously being convicted of an aggravated felony and deported. He was sentenced to twenty years of imprisonment—the statutory maximum. While there was no formal, written plea agreement, there was an informal agreement. The Government promised to support a within-guidelines sentence, but it did not do so, breaching its agreement. We vacate the sentence and remand to a different sentencing judge.

No. 24-60602

## I

Luis Javier Sanchez-Zurita was indicted on one count of illegal reentry by a removed alien with an aggravated felony.[1]  After his indictment, the Government and defense counsel discussed a possible plea agreement via email.  Defense counsel requested that the plea agreement allow an appeal for a sentence exceeding the guidelines.  The Government denied the request and noted that its proffered plea agreement recommended a "within guideline sentence (lower 50%)."  Defense counsel then asked about the Government's stance if Sanchez-Zurita pled open.  The Government agreed to "recommend the 3 levels for acceptance" if he pled open, though ultimately he was not eligible for that deduction.[2]  Defense counsel then asked if the Government would still recommend a lower-50% guideline sentence if he pled open.  The Government responded:

> I stand by the recommendation, however, when a defendant pleads open, there is no recommendation. If the court asks me during sentencing, I will state the government would be satisfied with a guideline sentence. But an open plea is without a recommendation, correct.

Defense counsel then indicated he would "set up a meeting with Sanchez-Zurita and let [the Government] know which way we decide to go."  Defense counsel met with Sanchez-Zurita that same day and again the next week.

Sanchez-Zurita decided to enter an open plea.  During the plea hearing, the Government, defense counsel, and Sanchez-Zurita each communicated that there was no plea agreement when talking with the court.

---

[1] *See* 8 U.S.C. §§ 1326(a)(1), (b)(2).

[2] *See* U.S. Sent'g Guidelines Manual § 3E1.1(b) (U.S. Sent'g Comm'n 2023) (allowing for an additional 1-level decrease—for a total 3-level decrease— if the offense level is level 16 or greater).

Sanchez-Zurita agreed with defense counsel's statement that plea negotiations "were not necessarily fruitful . . . and that is why we have decided to go forward with an open plea." The court itself thus said, "As I stated before, this defendant did not . . . agree to a plea agreement with the Government." The court advised Sanchez-Zurita that the maximum imprisonment sentence under the statute would be twenty years.

Before sentencing, a probation officer prepared a presentence investigation report (PSR). The PSR calculated the offense level as 10, considering the offense, his previous felony conviction, and his acceptance of responsibility. The PSR noted that "[t]here is no plea agreement in this case." It provided the "guideline imprisonment range" as eight to fourteen months. Neither party objected to the PSR, and the court adopted it as written.

At the sentencing hearing, the court indicated it was considering an upward variance and turned to the prosecution first:

> THE COURT: . . . The prosecution is not asking for a variance; is that correct?
>
> [GOVERNMENT]: That's correct, Your Honor.
>
> THE COURT: The prosecution does not have a plea agreement with the defendant, though; is that correct?
>
> [GOVERNMENT]: That's correct, Your Honor.
>
> THE COURT: And so then the prosecution, I would imagine, would take no position as to whether the Court should order a variance or not. Or am I wrong?
>
> [GOVERNMENT]: You're correct with that, Your Honor.

No. 24-60602

THE COURT: That the prosecution takes no position?

[GOVERNMENT]: No position, Your Honor.  We leave the matter of sentencing to the Court's discretion.

Defense counsel and the defendant made arguments against the possible variance.

Before discussing its reasons for a variance, the court recognized that Sanchez-Zurita "pleaded guilty without benefit of any plea agreement with the prosecution, so the Court does not have to explain away whether it will accept the plea agreement because there is no recommendation from the prosecution."

After the court listed factors that favored a variance, defense counsel objected to a variance and "note[d] for the record [that] in discussions with the Government when [Sanchez-Zurita] decided to plead open that there was what I understood as an agreement to recommend the guidelines, including the lower 50 percent."  The court nonetheless imposed its sentence of 240 months of imprisonment,[3] and defense counsel "renew[ed] . . . objections to the variance and the reasons given."

Sanchez-Zurita timely appealed.  Before briefing, both parties filed motions to remand, with Sanchez-Zurita requesting remand to a different sentencing judge.  The Government stated, after reviewing the emails described above:

> With the benefit of hindsight and reading the emails through a lens most favorable to Sanchez-Zurita, the government agrees that—though it did not intend to bind itself to making a particular sentencing recommendation if Sanchez-Zurita pled open—Sanchez-Zurita could have misunderstood the

---

[3] *See* 8 U.S.C. § 1326(b)(2) (setting a maximum imprisonment of twenty years).

> government's intention and read the emails to suggest that the government would inform the sentencing court that it would be "satisfied with a guideline sentence." Because of this potential misunderstanding and wanting to fulfil any agreement it inadvertently made, the government moves for a remand so that Sanchez-Zurita can be re-sentenced with the benefit of a statement from the government that it would be "satisfied with a guideline sentence."

The Government clarified in its reply that it moved for remand "not because it breached [a] non-existent plea agreement" but "out of an abundance of caution and in the interest of justice" based on a "misunderstanding in a pre-plea email exchange." A Fifth Circuit panel reviewed these motions, found that "there was no plea agreement," and noted that "[n]either side has submitted any emails or other evidence of any agreement to our court." The panel denied the Government's motion. It did not rule on Sanchez-Zurita's motion for reassignment on remand, and that motion has been carried with the case. After the panel issued its order, Sanchez-Zurita successfully moved to supplement the record on appeal with the emails in which defense counsel and the Government discussed a plea agreement.

## II

Sanchez-Zurita argues that the Government made and breached an agreement to support a within-guidelines sentence and that he is entitled to specific performance of that agreement before a different sentencing judge. "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."[4] The "defendant has the

---

[4] *Santobello v. New York*, 404 U.S. 257, 262 (1971).

No. 24-60602

burden of proving the underlying facts by a preponderance of the evidence" for a breach of a plea agreement.[5]

A prior panel for this court concluded that "there was no plea agreement" and denied the motion for remand. However, "opinions and orders of a panel with initial responsibility for resolving motions filed in an appeal are not binding on the later panel that is assigned the appeal for resolution."[6] We therefore (A) re-evaluate whether there was an agreement, (B) determine whether Sanchez-Zurita relied on that agreement, and (C) examine whether the Government breached that agreement.

## A

The parties agree there was no formal, written plea agreement, so the only question is whether there was an informal agreement stemming from emails between the Government and defense counsel. In those emails, the Government stated that it would lend its support for a within-guideline sentence if asked. When the Government advised the court at the sentencing hearing that it was not taking a position, defense counsel objected.

The district court stated at the plea hearing that it had "no plea agreement," and at the sentencing hearing that Sanchez-Zurita "pleaded guilty without benefit of any plea agreement." However, the district court, like our prior panel, did not have the opportunity to view the relevant emails,[7] which prompted the Government to move for remand in this court to "fulfil any agreement it inadvertently made." Additionally, as we have noted

---

[5] *United States v. Harper*, 643 F.3d 135, 139 (5th Cir. 2011).

[6] *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 176 (5th Cir. 2020).

[7] *See Gibson v. Blackburn*, 744 F.2d 403, 405 n.3 (5th Cir. 1984) ("Although a court of appeals will not ordinarily enlarge the record to include material not before the district court, it is clear that the authority to do so exists.").

previously in an unpublished case, a district court's statements that there was "no plea agreement" are not necessarily dispositive, if there is other evidence of a plea agreement.[8]

The Government emphasizes that Sanchez-Zurita confirmed to the district court that there was no plea agreement, and it cites to the rule that the court "generally will not allow a defendant to contradict his testimony given under oath at a plea hearing."[9] Sanchez-Zurita argues that claiming there was an *informal* agreement does not contradict his testimony at the plea hearing that there was no *formal* written agreement.

In recognizing an exception to the general rule that the Government references, this court has noted that, "a defendant may seek collateral relief based on an alleged promise, though inconsistent with his statements in open court, by proving '(1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise.'"[10] While this is a direct appeal with a different standard of review, it is still relevant that the emails provide the (1) exact terms of the alleged promise and (2) details about who made the promise and when, with no need for (3) an eyewitness. The promise did not require further cooperation by Sanchez-Zurita, nor was the email

---

[8] *See United States v. Harrier*, 229 F. App'x 299, 301 (5th Cir. 2007) (finding that "the district court's statements that 'I have no plea agreement,' 'there is no plea agreement,' or 'you have no plea agreement'" were references "to the absence of a *written* plea agreement" and finding that there was an oral agreement based on the government's dismissal of one count and other statements in court by the parties recognizing the dismissal and plea as an agreement).

[9] *United States v. McDaniels*, 907 F.3d 366, 371 (5th Cir. 2018).

[10] *McDaniels*, 907 F.3d at 371 (quoting *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)).

"deliberately guarded and vague."[11]  The promise, while unusual for an open plea, was specific: "If the court asks [the Government] during sentencing, I will state the government would be satisfied with a guideline sentence."

**B**

"[T]he government may neither misrepresent its intentions nor renege on representations *reasonably relied and acted upon* by defendants and their counsel."[12]  "This court applies general principles of contract law in interpreting the terms of a plea agreement."[13]  "Analogous to promissory estoppel, plea bargaining must have more substantiality than mere expectation and hope.  It must have explicit expression and reliance and is measured by objective, not subjective, standards."[14]

Sanchez-Zurita argues that "[d]efense counsel explicitly and repeatedly bargained for the Government's promise, showing that the promise was important to [him]."  He points out that defense counsel met with him the day the Government made the promise and a week later, "supporting that [defense counsel] advised Mr. Sanchez-Zurita about the Government's promise."[15]  He argues that by entering an open plea, he "accepted the Government's promise"[16] and that his objection during the

---

[11] *Contra Villa v. United States*, 135 F.4th 513, 516 (6th Cir. 2025) (finding an email was not a plea offer when it required "additional cooperation" by the defendant and stated that the prosecutor "would consider changing [his] recommendation").

[12] *United States v. Melton*, 930 F.2d 1096, 1098 (5th Cir. 1991) (emphasis added).

[13] *United States v. Long*, 722 F.3d 257, 262 (5th Cir. 2013).

[14] *Johnson v. Beto*, 466 F.2d 478, 480 (5th Cir. 1972).

[15] *See also Missouri v. Frye*, 566 U.S. 134, 145-46 (2012) (outlining defense counsel's responsibility to promptly inform clients of plea offers).

[16] *Cf. Johnson*, 466 F.2d at 479 ("The federal trial court found that [the defendant] accepted the offer by pleading guilty.")

sentencing hearing demonstrated his expectations that the Government would fulfill its promise. He contends that his statements at the plea hearing "are best understood as denying a formal, written plea agreement."

The Government claims "there is nothing to indicate that Sanchez-Zurita relied on [the Government's statement in the email] in deciding to plead guilty." The Government notes that the statement is "sandwiched between two sentences clarifying that 'an open plea is without a recommendation.'" The Government also points out that the e-mail correspondence did not end with an acceptance but rather a statement by Sanchez-Zurita's defense counsel that he would "let [the Government] know which way [they] decide[d] to go." The Government argues that Sanchez-Zurita's rejection of its offers was demonstrated through defense counsel's statements in court that negotiations with the Government were not "fruitful," which was why Sanchez-Zurita "decided to go forward with an open plea."

Sanchez-Zurita reasonably relied on the Government's promise. Defense counsel confirmed what the Government was willing to do if Sanchez-Zurita entered an open plea: the Government would "state [it] would be satisfied with a guideline sentence" "[i]f the court asks [it] during sentencing." Sanchez-Zurita then entered an open plea, and defense counsel objected when the Government did not fulfill its promise at the sentencing hearing.

It is true, as even defense counsel recognizes, that this agreement was "atypical." But the promise was clear and specific and would be operative if Sanchez-Zurita entered a guilty plea without an agreement. Though the Government argues he "misunderstood [its] intention," it also recognized in its motion for remand that Sanchez-Zurita could have "read the emails to suggest that the government would inform the sentencing court that it would

be 'satisfied with a guideline sentence.'" We conclude that Sanchez-Zurita could reasonably have read the emails in that manner and relied upon them in entering an open plea.

## C

"[A] claim that the Government breached a plea agreement is reviewed de novo."[17] "The Government must strictly adhere to the terms and conditions of its promises in a plea agreement."[18] "If the Government breaches a plea agreement, the defendant may seek one of two remedies: specific performance, requiring resentencing before a different judge; or withdrawal of his guilty plea."[19] "The defendant is entitled to relief even if the Government's breach did not ultimately influence the defendant's sentence."[20]

The Government breached its agreement to "state [it] would be satisfied with a guideline sentence" if asked by the court during sentencing. While the court did not explicitly ask, "Would the Government be satisfied with a guideline sentence," the court essentially asked for the Government's position on a within-guideline sentence when it inquired about the Government's position with regard to a variance above the guideline sentence. The Government chose to take no position rather than state that it would be satisfied with a guideline sentence. The Government itself recognized Sanchez-Zurita did not receive the benefit of the representation made to his counsel when it filed a motion on appeal, before briefing was completed, to remand for resentencing so it could fulfill its promise. We now

---

[17] *United States v. Malmquist*, 92 F.4th 555, 562 (5th Cir. 2024).

[18] *United States v. Harper*, 643 F.3d 135, 139 (5th Cir. 2011).

[19] *Id.*

[20] *Id.*

No. 24-60602

give the Government that opportunity and grant Sanchez-Zurita's request for specific performance of the agreement before a different sentencing judge.[21]

\*　　\*　　\*

For the foregoing reasons, we VACATE Sanchez-Zurita's sentence and REMAND for resentencing. We GRANT Sanchez-Zurita's motion for reassignment on remand.

---

[21] *See United States v. Williams*, 821 F.3d 656, 658-59 (5th Cir. 2016) ("When the Government breaches a plea agreement, a defendant has the right . . . to have his chosen remedy accepted, either specific performance of the plea agreement and resentencing before a different judge, or withdrawal of the guilty plea" with the caveat that it may be "necessary first to find a breach to be material before allowing the defendant to rescind the plea agreement.").