RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0109p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

AMAURY VILLA, aka Amuary Villa,

      *Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

      *Respondent-Appellee*.

No. 24-5973

---

Appeal from the United States District Court for the Western District of Kentucky at Owensboro.
Nos. 4:13-cr-00033-1; 4:19-cv-00001—Gregory N. Stivers, District Judge.

Decided and Filed: April 29, 2025

Before: KETHLEDGE, READLER, and MURPHY, Circuit Judges.

---

**COUNSEL**

**ON BRIEF:** Howard Sohn, Boynton Beach, Florida, for Appellant. Madison T. Sewell, UNITED STATES ATTORNEY'S OFFICE, Louisville, Kentucky, for Appellee.

---

**OPINION**

---

KETHLEDGE, Circuit Judge. In 2020, Amaury Villa moved to amend his motion for sentencing relief under 28 U.S.C. § 2255—seeking to add a claim that his counsel had not told him about a plea offer that the prosecution had sent via email. When this case was last before us, we remanded to the district court to hold an evidentiary hearing on whether Villa's motion to amend was timely. *Villa v. United States*, 56 F.4th 417, 421 (6th Cir. 2023). On remand, the court found that Villa's motion was timely, but held on the merits that the prosecutor's email to counsel was too indefinite to count as a formal offer. We affirm.

I.

In 2011, Amaury Villa participated in two large-scale burglaries. First, he broke into an Eli Lilly warehouse in Connecticut and stole some $61 million worth of pharmaceutical products. Then he took those products to Florida and sold them there. Next, he broke into a cigarette warehouse in Kentucky and stole some $1.5 million worth of cigarettes, which he sold in New York and New Jersey. Federal grand juries in Florida and Connecticut indicted Villa on charges related to the pharmaceutical heist, while a federal grand jury in Kentucky indicted him on charges related to the cigarette heist. Kentucky prosecutors had their indictment sealed.

Meanwhile, Villa pled guilty in the Florida and Connecticut cases and cooperated with prosecutors there. Among other things, he confessed his role in the Kentucky burglary and named one of his co-conspirators in that heist, Camilo Rodriguez-Hernandez. By December 2015, the district courts in the Florida and Connecticut cases had entered judgments sentencing Villa to concurrent prison terms of 140 months and 98 months, respectively.

On January 9, 2016, the Kentucky prosecutor, Joshua Judd, emailed a proposed plea agreement to Villa's attorney in that case, Donald Meier. The agreement assumed no further cooperation on Villa's part and thus did not mention the possibility of a sentence concurrent with those in the Florida and Connecticut cases. But Villa had expressed to Meier some willingness to meet with prosecutors, so Meier began working to set up a meeting (known as a proffer session) where Villa could begin to share with them what he knew. Meanwhile, on January 21, Judd emailed Meier for a response to the proposed plea agreement. In that email, Judd said he would consider recommending a concurrent sentence if Villa cooperated further. Meier spoke with Villa by phone that afternoon and told him that prosecutors were interested in a meeting, though Meier did not mention Judd's latest email specifically. Villa agreed to meet, and the proffer took place on February 1. That session ended quickly, however, when Villa told prosecutors he had nothing to say about Rodriguez-Hernandez. Villa thereafter pled guilty without a plea agreement, and the district court sentenced him to 77 months' imprisonment—to be served consecutively to his other sentences.

In January 2019, Villa moved under 28 U.S.C. § 2255 to set aside that sentence, raising nine claims of ineffective assistance of counsel. By then he had a new attorney, Howard Sohn, who received Meier's case file that October. Only then, Villa says, did he discover the emails in which Judd said he was willing to discuss a cooperation agreement. Villa moved to amend his § 2255 motion to add a tenth claim, based on Meier's alleged failure to disclose the potential cooperation agreement. The district court denied the motion, finding that claim untimely because it "could have been discovered" well before Villa sought leave to assert it. *See* 28 U.S.C. § 2255(f)(4).

Villa appealed, and we remanded to the district court to hold an evidentiary hearing as to whether his tenth claim was timely, and if so potentially to address the claim's merits. *Villa*, 56 F.4th at 421.

The district court held an evidentiary hearing and found the claim timely. In a reasoned opinion, however, the court denied the claim on the merits. This appeal followed.

## II.

### A.

As an initial matter, the district court entered a judgment that denied Villa's motion to amend—while saying nothing about Villa's claim on the merits. R.269, Pg. ID 2266, *see also* R.268, Pg. ID 2265. That judgment was inconsistent with the district court's opinion, which discussed in some detail why Villa's claim failed on the merits. On that point the parties agree. We therefore presume the judgment is mistaken in its description of the court's decision, and proceed as if the district court meant to deny Villa's claim on the merits. *See In re Walter*, 282 F.3d 434, 441 (6th Cir. 2002); 11 Wright & Miller § 2856 & n.4 (3d ed.) (collecting cases).

### B.

Villa alleges that Meier never told him about Judd's openness to a cooperation agreement in which Judd could have recommended that Villa's sentence in the Kentucky case be concurrent with those in his Florida and Connecticut cases. And based on that allegation, Villa argues that Meier provided constitutionally ineffective assistance of counsel.

Whether the government made a plea offer is a factual question, so on that point we review the district court's findings for clear error. *See United States v. Napier*, 463 F.3d 1040, 1046 (9th Cir. 2006); *cf. Bobbie Brooks v. Int'l Ladies Garment Workers Union*, 835 F.2d 1164, 1168 (6th Cir. 1987) (existence of contract is factual question). We otherwise review the denial of a § 2255 motion de novo. *Hamblen v. United States*, 591 F.3d 471, 473 (6th Cir. 2009).

"[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). Failure to communicate such "formal offers" amounts to deficient performance under *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Here, the district court found that Judd had made only one plea offer, which he conveyed to Meier by email on January 9, 2016; and that Judd had said nothing then about a concurrent sentence in the Kentucky case. (Instead he offered to recommend a sentence at the bottom of the guidelines range, without any mention of whether it would be concurrent.) The district court also found that Meier had, in fact, told Villa about that offer, which the parties and the court had indeed discussed at Villa's change-of-plea hearing in May 2016. In this appeal, Villa has shown none of these findings to be clearly erroneous; and so, as to the January 9 offer, we agree with the district court that Meier satisfied his obligation under *Missouri v. Frye*.

Yet Villa contends that Judd made another offer, in his January 21 email. In that email Judd ruled out any recommendation of a concurrent sentence, "unless there is some additional cooperation. For instance, if Villa pleaded, cooperated against Camillo [sic], and testified, I would consider changing that recommendation." At most, however, this email was merely an invitation to negotiate about potential cooperation, rather than a "formal offer" with terms concrete enough to enforce. *Frye*, 566 U.S. at 145. For example, the email recited no measure to determine later whether Judd had sufficiently "consider[ed] changing" his recommendation regarding Villa's sentence; to the contrary, on that point, the email is deliberately guarded and vague. Nor did the email prescribe any rule (*e.g.*, "must fully disclose") for the substance of Villa's cooperation. *See generally* Williston on Contracts, §§ 4:10, 4:22 (4th ed.). By contrast, in *Frye*, the offer was in writing and included a choice of two plea bargains—with specific recommended prison terms for each. 566 U.S. at 138, 145. We therefore see nothing in Judd's

January 21 email that amounted to an offer—much less a formal one, as *Frye* contemplates.  The district court was correct to reach that conclusion.

Finally, Villa argues that Meier's performance was deficient because, Villa says, Meier "impeded" negotiations that could have led to a better plea deal.  *See generally Byrd v. Skipper*, 940 F.3d 248, 257 (6th Cir. 2019).  The person who impeded such negotiations, however, was Villa himself—when he refused to provide Judd with any further information about his co-conspirator.  The district court was right to deny Villa's tenth claim for relief.

\*      \*      \*

The district court's judgment is affirmed to the extent it denied Villa's January 2, 2019, motion to vacate, set aside, or correct his sentence.  *See* R.129.  The district court may, in its discretion, revise its judgment to reflect its intent more accurately.  *See* Fed. R. Civ. P. 60(a).